UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

NEXUS SERVICES, INC, *et al.*,

Plaintiffs,

v. Case No.: 5:16-CV-00035

DONALD LEE MORAN, *et al.*,

Defendants.

**DEFENDANT BOURNE'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS**

David L. Bourne ("Bourne"), through his undersigned counsel, files this memorandum in support of his motion to dismiss Counts IV, V and VI of the Plaintiffs' Complaint and states the following in support thereof.

**BACKGROUND**

Defendant Bourne is a licensed bail bondsman under the laws of the Commonwealth of Virginia.[1] The Plaintiffs, Donovon and Moore are convicted felons who are not licensed as required by the Commonwealth of Virginia to engage in the business of providing bonding and surety services to accused, criminal defendants. The plaintiffs have indeed engaged in the business of providing such services in the Commonwealth of Virginia and have evaded the licensing requirements by fraudulently stating that their work is charitable and no fee is charged. Counts IV, V and VI of this litigation are, in part, a vexatious attempt to silence anyone who dares report, comment, question or investigate the legality of their actions in providing charitable

[1] Complaint, p. 2

bonding services to criminal defendants. As a licensed bondsman in the Commonwealth of Virginia Bourne has a legitimate interest and qualified privilege to discuss and question the Plaintiffs' bonding activities as set forth in Complaint with the insurer for whom he is an agent, Lexington National, law enforcement officers, and staff of the regional jail. Bourne's communications with the representatives of the Commonwealth in semi-judicial functions and in response to governmental investigations are absolutely privileged. The Complaint sets forth no facts no facts to support the plaintiffs' claims against Bourne.

As Set forth in detail below, this Court should dismiss Counts IV, V and VI for the following reasons:

(1) Count IV of the Complaint fails to state a claim of defamation under Virginia common law.

(2) Count VI of the Complaint fails to state a claim for civil, statutory conspiracy under Va. Code § 18.2-499.

(3) Count V of the Complaint fails to state a claim for Insulting Words under Va. Code §8.01-45.

(4) Plaintiffs state no facts that Bourne abused his qualified immunity.

(5) Bourne in addition to qualified immunity as absolute immunity.

**STATEMENT OF FACTS**

As the Court is aware, in considering whether, under Rule 12(b)(6), a pleading sates a cause of action, the plausible allegations of the Complaint are assumed to be true. The sufficiency of those allegations is reckoned without reference to any facts other than those expressly alleged in the complaint and "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 332 (2007). The

Complaint alleges that Bourne sent eight emails which were attached to the Complaint as Exhibits A-E, G, I and J.[2] These emails were sent to:

(1) Representatives of Lexington National Insurance Company ("Lexington"), an insurer for whom Bourne is an agent[3] and with whom he has a business interest in the writing of " vast majority of for-profit criminal bonds that are written for persons detained for suspected crimes in Augusta County, Virginia,"[4]

(2) Donald L. Moran ("Moran") who is a law enforcement officer employed as deputy in the Augusta County Sheriff's Office,[5]

(3) Jack Lee ("Lee"), the Superintendent of the Middle River Regional Jail located in Augusta County, Virginia.[6]

(4) Tim Martin ("Martin"), the Commonwealth Attorney for the County of Augusta, Virginia.[7]

Bourne is not alleged in the Complaint to have made any defamatory communications other than the communications contained in these emails. Bourne's statements and emails to Moran are absolutely privileged in response to a governmental investigation conducted by the Augusta County Sheriff's Office.[8] Bourne's statements to Martin are absolutely privileged as made in

---

[2] The Ehxibits are not consistent with their references in the Complaint and are being referred to as they are marked.
[3] ¶ 5 of the Complaint.
[4] ¶ 5 of the Complaint.
[5] ¶4 of the Complaint.
[6] ¶ 13 of the Complaint.
[7] ¶ 12 of the Complaint.
[8] Ex. A of Plaintifffs' Complaint states at , p. 2 "Deputy Sheriff Don Moran, assigned to the FBI task force, also a former agent of ours, *has contacted us in reference to undertakings of Nexus and advised that the Sheriff [Donald Smith] was rather concerned with what they were doing and wanted him to look into it.* I have provided him with all this documentation as well as background element on Mike Donovon and Richard Moore and after some further probing, the FBI may launch an investigation." *Emphasis added.*

connection with a semi-judicial matter and/or a governmental investigation. Bourne's statements to Lee and representatives of Lexington are protected by a qualified privilege. Assuming this Court finds that Bourne's statements are not privileged, the Plaintiffs' Complaint still fails to state sufficient facts to support the causes of action alleged in Counts IV-VI.

## LEGAL ARGUMENT

### A. The Court treats only the well pleaded allegations of the Complaint as True.

Under the standard for evaluating a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a court treats the "well-pleaded" facts in a complaint, in contrast to allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. The Court is not 'bound to accept as true a legal conclusion couched in a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "[W]as it otherwise, Rule 12(b)(6) would serve no function, for its purpose is to provide a defendant with a mechanism for testing the legal sufficiency of the Complaint." *District 28, Mine Workers of America, Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1979); *see also, Randall v United States*, 30 F.3d 518, 522 (4th Cir. 1984) ("we are not . . . bound by the plaintiff's legal conclusions"). Thus a complaint that relies upon "labels and conclusions, and a formulaic recitation of the elements of the cause of action" does not suffice to state a cause of action. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 554, 555 (2007). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . ." *Id.* In other words, a complaint must be "plausible on its face" – meaning that the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). Under these black-letter rules of law, the Complaint must, as a matter of law, be dismissed against Mr. Bourne.

**B. Bourne's Statements Contained in the Emails are Protected by both Absolute and Qualified Privilege.**

In Virginia, defendants may be immune to liability for defamatory statements if they are protected by a privilege. The application of the doctrine of absolute judicial privilege is a bar to liability for defamation. *Donohoe Const. Co. v. Mount Vernon Assocs.*, 235 Va. 531, 369 S.E.2d 857 (1988). If a court finds a qualified privilege, it must determine whether or not the Plaintiff has raised enough of a probability of abuse for the question to be one for the jury. The question then falls on the jury to determine whether or not the Defendant exceeded his privilege. *Alexandria Gazette Corp. v. West*, 198 Va. 154, 160, 93 S.E.2d 274, 279 (1956). It is also well established that, "It is for the court to rule whether or not an occasion is a privileged one, and if it be one of privilege, whether a qualified or absolute privilege." *Aylor v. Gibbs*, 143 Va. 644 at 648 (1925).

**1. Bourne's statements to Tim Martin, the Augusta County Commonwealth Attorney, are protected by the privileged absolute privilege of a semi-judicial matter**

The rule in Virginia is laid out by the case of *Penick v. Ratcliffe*, 149 Va. 618, 140 S.E. 664 (1927), which held that testimony given during a judicial proceeding is absolutely privileged. However, policy considerations do not limit the judicial proceeding privilege to the actual participants. *Watt v. McKelvie*, 219 Va. 645, 248 S.E.2d 826 (1978). Furthermore, the term proceeding is a highly inclusive one, which does not limit itself to the trials themselves.

"Although courts may differ in determining when a proceeding is 'judicial,' the rule of absolute privilege accorded judicial proceedings is not limited to trials.... The rule is broad and comprehensive, including within its scope all proceedings of a judicial nature whether pending in some court of justice, or before a tribunal or officer clothed with judicial or quasi-judicial powers." *Penick*, 149 Va. 618, 627–28, 140 S.E. 664, 667.

The concern thus turns to what the phrase "judicial nature" means. Quasi-judicial, as defined by *Black's Law Dictionary* 1245 (6th ed.1990), is a "term applied to action, discretion, etc., of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature." Courts have recognized that a prosecuting attorney has quasi-judicial duties. The case of *Ganger v. Peyton*, 379 F.2d 709 at 713 (4th Cir.1967), addressed the issue in stating, "At common law, a prosecuting attorney is the representative of the public in whom is lodged a discretion which is not to be controlled by the courts or by an interested individual." The *Ganger* court relied heavily on the decision of *United States v. Brokaw*, 60 F.Supp. 100 at 101 (S.D.Ill.1945), which held that, "The control of criminal litigation during many stages of a prosecution is a prerogative and power closely akin to the power of initiating a prosecution." Furthermore, the court clarified the duties in question, saying that, "at different stages of a prosecution he [the prosecuting attorney] exercises that control administratively and may not be required to submit his authority in this respect to the control of a judicial discretion or to the desires of interested individuals or groups of individuals." *Id.*

This control and functioning outside the scope of purely judicial duties creates quasi-judicial responsibilities explicitly recognized in later cases. *Wellman v. State of West Virginia*,

637 F.Supp. 135 at 137 (S.D.W.Va.1986), stated that "Prosecutors are absolutely immune for the[ir] quasi-judicial functions. The functions protected include those involved with initiating and pursuing a criminal prosecution."

Standing alone, quasi-judicial immunity of a prosecutor does not grant immunity to Bourne as he is not a prosecuting attorney. However, in *Smith v. Rossini*, 49 Va. Cir. 194 (Va. Cir. 1999), the Albemarle Circuit Court held that disparaging and insulting statements made by a private citizen to a prosecutor are absolutely privileged as a semi-judicial function. In Smith, the defendant told the prosecutor that the plaintiff was a "lunatic," a "maniac" and a "bad kid." Courts have extended this immunity to statements made to a magistrate. *Darnell v. Davis*, 190 Va. 701, 58 S.E.2d 416 (Statements made to a magistrate in securing or dismissing a criminal warrant are statements made in the course of a judicial proceeding and are thus privileged).

Applying the facts of the present case to the *Black's* definition of the phrase "quasi-judicial," the emails Bourne sent to Martin in his capacity as the Commonwealth's Attorney and who is required to investigate facts, ascertain the existence of facts, weigh evidence, and draw conclusions from that evidence. There is thus an inherent safeguard as in a judicial hearing in that his duties require him to exercise, as mentioned, discretion of a judicial nature and weigh what he is told. He did not have to believe what Moran was telling him, and he had discretion to investigate as he felt was appropriate. Most importantly, however, it is clear that his function created a quasi-judicial proceeding which shrouded the actions involved with his investigation with an absolute privilege.

**2. Statements made in Bourne's emails to Moran in response to a governmental investigation are absolutely privileged.**

Statements made in response to a government investigation are absolutely privileged and cannot form the basis of a claim for defamation or insulting words. In *Holmes v. Eddy,* 341 F.2d 477, 480 (4th Cir.1965) the Fourth Circuit held that information given to the Securities and Exchange Commission ("SEC") by a private person (a stockbroker) for the purpose of initiating a prosecution "is protected by the same cloak of immunity and cannot be used as a basis for an action for defamation." *See Also Shabazz v. PYA Monarch, LLC,* 271 F. Supp. 2d 797, 805-06 (E.D. Va. 2003) where a defamation defendant's statements made in compliance to a FBI request to provide information are protected by immunity and cannot provide the basis of a defamation action. Bourne complied with an investigation by the Augusta County Sheriff's Office in providing the information it possessed on the plaintiffs to Moran and Martin. Complying with such a governmental investigation provides Bourne with a shield of absolute immunity.

**3. Bourne has a qualified privilege to communicate with representatives of Lexington and Lee regarding the plaintiffs' bonding activities.**

Plaintiffs have failed to plead facts that Bourne acted with common-law malice which is necessary to defeat his qualified privilege. Assuming, *arguendo,* that the defendant's communications with Martin and Moran were not absolutely privileged, they would still be covered by a common-law qualified privilege. In Virginia, "[a] communication, made in good faith, on a subject matter in which the person communicating has an interest, or owes a duty, legal, moral, or social, is qualifiedly privileged if made to a person having a corresponding interest or duty." *Taylor v. Grace*, 166 Va. 138, 144, 184 S.E. 211, 213 (1936). Accordingly, courts have held that communications made in the context of an employment relationship are covered by this qualified privilege. *See, e.g., Southeastern Tidewater Opportunity Project, Inc. v. Bade,* 246 Va. 273, 276, 435 S.E.2d 131, 132 (1993) (holding that a letter of termination, which

included accusations of misconduct, was qualifiedly privileged); *Kroger Co. v. Young,* 210 Va. 564, 566, 172 S.E.2d 720, 722 (1970) (finding that statements made "by an employer to his employees of reason for the discharge of a fellow employee ... are qualifiedly privileged."). Likewise, communications to law enforcement, including the FBI, would also be protected by qualified privilege. *See Marsh v. Commercial AN Savings Bank of Winchester, Va.,* 265 F.Supp. 614, (W.D.Va.1967) (finding, as a matter of law, that statements made by two bank tellers to the police regarding robbery were occasions of qualified privilege which could not be used as the basis for defamation claim); *see also Howell v. Operations Mgmt. Int'l, Inc.,* 161 F.Supp.2d 713, 717 (N.D.Miss.2001) (holding that employer's reporting of suspicious activity to sheriff's office is protected by qualified privilege); *Baer v. Sprint Long Distance,* 60 F.Supp.2d 209, 211–12 (S.D.N.Y.1999) (finding employer's statements to police regarding suspicion that employee committed theft are privileged). Therefore, the defendant's statements to Moran and Martin and to Lee and representatives of Lexington National, if not protected by absolute privilege, are covered by qualified privilege.

A qualified privilege may be defeated "if a plaintiff proves by clear and convincing evidence that the defamatory words were spoken with common-law malice." *Southeastern Tidewater,* 246 Va. at 276, 435 S.E.2d 131 (quoting *Smalls v. Wright,* 241 Va. 52, 55, 399 S.E.2d 805, 808 (1991)); *accord Marsh,* 265 F.Supp. at 621 (quoting *Peoples Life Ins. Co. of Washington D.C. v. Talley,* 166 Va. 464, 469, 186 S.E. 42, 44 (1936)). Without any allegation of actual malice on the part of the defendant, the qualified privilege afforded to these communications is not defeated. *See, e.g., Round v. Boeing N. Am. Svcs., Inc.,* 181 F.3d 90, 1999 WL 417452 (4th Cir.1999) (unpublished) (affirming district court's grant of summary judgment

where there was no evidence showing that defendant acted with malice that would destroy the qualified privilege of the communications).

(4) Bourne's communications are protected by the immunity afforded witnesses and participants in law enforcement investigations including but not limited to Va. Code §18.2-501, or the subject matter if such proceedings, and in addition to Va. Code § 52-49 regarding cooperating or furnishing evidence or information regarding suspected criminal violation with respect to the Virginia Fusion Intelligence Center.

C. **Assuming Bourne's statements are not privileged, The Complaint <u>fails to state a Claim of Civil Conspiracy under Va. Code § 18.2-499.</u>**

1. To state a claim for civil statutory conspiracy under Virginia Code §§ 18.2-499 and -500, the plaintiffs must allege: "(1) concerted action; (2) legal malice; and (3) causally related injury." *See Allen Realty Corp. v. Holbert*, 227 Va. 441, 449, 318 S.E.2d 592, 596 (1984). "Concerted action" requires plaintiff to sufficiently allege that the defendant "combined, associated, agreed, mutually undertook, or concerted together" with someone else in the injurious conduct. Va. Code Ann. 18.2-499; *Simmons v. Miller*, 261 Va. 561, 544 S.E.2d 666, 667 (2001). Absent from the Complaint are actual facts establishing any meeting of the minds, or mutual undertaking between or among Bourne or any of the other named defendants. The only *contact* alleged between Bourne and a named defendant, Moran, are the emails contained in Exhibits A-E.

2. In addition, the Plaintiffs must allege an unlawful act or unlawful purpose, as there can be no conspiracy to do an act which the law allows. *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402, 337 S.E.2d 744 (1985). The only facts alleged to defendant Bourne are that he sent emails about the Plaintiffs' background and business as it relates to their

writing bonds for individuals who had an interest therein and that they did not meet the criteria nor have the requisite character for licensure as bondsmen in the Commonwealth of Virginia.

**D. The Complaint fails to state a claim for defamation under Virginia common law or Insulting Words Pursuant to <u>Virginia Code §8.01-45.</u>**

Assuming that the statements made by Bourne are not protected by privilege, the statements made by Bourne that Donovon and Moore are convicted felons are admitted to be true. The Complaint also admits that the Plaintiffs engage in underwriting bail bonds on a charitable basis *without a license*. The complaint does not allege Bourne made false and defamatory statements, nor does it allege any specific damage caused thereby.

**CONCLUSION**

Based on the foregoing, this Court should dismiss Counts of the Complaint with prejudice.

Respectfully Submitted,

Thomas Weidner IV, PLLC

By: ______________________

Thomas Weidner IV
VSB # 30689
Counsel for Defendant David L. Bourne
Thomas Weidner IV, PLLC
1756 Jefferson Highway
Fishersville, Virginia 22939
Phone: (540) 949-9430
Fax: (540) 221-2471
Email: tw@tomweidner.com

CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2016, I have electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Andre A. Hakes, Esquire
Tucker Griffin Barnes, PC
307 Rio Road West
Charlottesville, VA 22901

Mary Donne Peters, Esquire
Amy C.M. Burns, Esquire
Michael J. Gorby, Esquire
Gorby, Peters & Associates, LLC
Two Ravinia Drive, Suite 1500
Atlanta, GA 30346

*Counsel for Plaintiffs*

Rosalie Pemberton Fessier, Esquire
Timberlake, Smith, Thomas & Moses, P.C.
25 North Central Avenue
Staunton, VA 24402

*Counsel for Defendant Shrewsbury*

______________________
Thomas Weidner IV
VSB No. 30689
Attorney for Defendant Bourne
1756 Jefferson Highway
Fishersville, Virginia 22939
Phone: (540) 949-9430
Fax: (540) 221-2471
Email: tw@tomweidner.com

Dated: June __, 2016