## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | | |
|---|---|---|
| **NEXUS SERVICES, INC.,** | ) | |
| **MICHEAL DONOVAN, and** | ) | |
| **RICHARD MOORE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Civ. Action No. <u>**5:16CV00035**</u> |
| | ) | |
| **DONALD LEE MORAN, in his** | ) | |
| **Individual capacity and in his Official** | ) | |
| **Capacity as a Deputy Sheriff of Augusta** | ) | |
| **County, Virginia; DAVID L. BOURNE,** | ) | |
| **in his Individual capacity; DONALD L.** | ) | |
| **SMITH, in his Individual capacity and in** | ) | |
| **his Official capacity as Sheriff of** | ) | |
| **Augusta County, Virginia; AUGUSTA** | ) | |
| **COUNTY SHERIFF'S OFFICE;** | ) | |
| **MICHAEL ROANE, in his Individual** | ) | |
| **capacity and in his Official capacity as a** | ) | |
| **Deputy Sheriff of Augusta County,** | ) | |
| **Virginia; and JOHN DOES 1-20,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## <u>AMENDED COMPLAINT DATED JANUARY 30, 2017</u>

Plaintiffs Nexus Services, Inc., Micheal Donovan and Richard Moore, move this Honorable Court for entry of judgment in their favor and against the above-named Defendants and in support of their Complaint aver as follows:

### I.        <u>NATURE OF THE ACTION AND JURISDICTION</u>

1.      This is a civil action under 42 U.S.C. §1983 for damages and injunctive relief against the Augusta County, Virginia, Sheriff — in his individual and representative capacity — and two deputy sheriffs and other John Doe Defendants, and the Augusta County Sheriff's

Office for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiffs of rights secured under the Constitution and the laws of the United States; for retaliating against the Plaintiffs for their exercise of constitutionally protected free speech in violation of the First Amendment of the United States Constitution; for retaliating against Plaintiffs for the exercise of their rights to petition the courts for relief from illegal police conduct in violation of the Petition Clause of the First Amendment of the United States Constitution; and for deprivation of the individual Plaintiff's right to be free of unreasonable searches and seizures in violation of  the Fourth Amendment of the United States Constitution.

2.      This is also an action for damages and injunctive relief against a for-profit bail bondsman, David Bourne, for defamation under Virginia Common Law.

3.      This is also an action for civil conspiracy against all Defendants, who conspired for the purpose of damaging Plaintiffs and their business interests, and stopping a not-for-profit criminal bail bonding program that the for-profit bail bondsman feared would compete with his business and decrease his profits all in violation of Va. Code §18.2-499 and 500.

4.      This Honorable Court has jurisdiction in this matter pursuant to 28 U.S.C. Sections 1331 and 1343. This Court has subject matter jurisdiction over all non-federal claims in this action pursuant to 28 U.S.C. § 1367(a). The declaratory and injunctive relief sought herein is authorized by 28 U.S.C. Sections 2201 and 2202, 42 U.S.C. Section 1983 and Rule 57 of the Federal Rules of Civil Procedure.

5.      Plaintiffs bring this action against the Defendant Sheriff, his Defendant Deputies and the Augusta County Sheriff's Office for damages incurred due to threats of physical harm by Sheriff's Office personnel in the presence of the Sheriff; frequent and inappropriate visits

to the Plaintiffs' home and business by uniformed officers of the Sheriff's Office for no lawful purpose; inappropriate contacts with Plaintiffs' employees by Sheriff's Office employees; aggressive and inappropriate driving maneuvers by a Defendant Sheriff's Office's Deputy to frighten and intimidate Plaintiffs; and a holiday weekend show of force by two uniformed deputies of the Sheriff's Office to block Plaintiffs' residential driveway all in violation of Plaintiffs' Constitutionally protected rights.

6.   This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C.1391(b)(1) and (b)(2). The acts complained of took place in this judicial district; the Defendants work and reside in this judicial district; evidence relevant to the allegations is maintained in this judicial district; and witnesses relevant to the allegations are present in this judicial district.

7.   The Augusta County Sheriff's Office is a corporate body and a political subdivision of the Commonwealth of Virginia and is a "person" subject to suit within the meaning of 42 U.S.C. Section 1983.

8.   Defendant Donald Smith is the Sheriff of Augusta County, Virginia. He is sued for damages in his individual capacity and for declaratory and injunctive relief in his official capacity.

## II.    PARTIES

9.   Plaintiff NEXUS Services, Inc. is a corporation organized and existing under the laws of the Commonwealth of Virginia. Its principal place of business is in the County of Augusta, Virginia.

10.  Plaintiffs Micheal Donovan ("Donovan") and Richard Moore ("Moore") are individuals who reside in the County of Augusta, Virginia.  Donovan is the President and CEO of

3

Nexus Services, Inc. and Moore is the Executive Vice-President of Nexus Services, Inc. Donovan and Moore are married.

11.    Defendant David L. Bourne ("Bourne") is an individual who resides in the County of Augusta, Virginia.  He is a licensed bail bondsman in the Commonwealth of Virginia, and a general agent for, among others, Lexington National Insurance Company. Defendant Bourne may be served at 333 Baldwin Lane, Staunton, VA 24401.

12.    Defendant Donald L. Moran ("Moran") is an individual who resides in the County of Augusta, Virginia.  He is currently employed as a Deputy Sheriff by the Augusta County Sheriff's Office.  Deputy Moran, who is sued in his individual and official capacity,  may be served at his place of business at the Augusta County Sheriff's Office, 127 Lee Hwy., Verona, VA 24482.

13.    Defendant Donald L. Smith ("Smith") is an individual who resides in the County of Augusta, Virginia.  Defendant Smith is the current Sheriff of Augusta County.  Defendant Smith may be served in his individual and representative capacity at his place of business in Augusta County, Virginia at the Augusta County Sheriff's Office, 127 Lee Hwy., Verona, Virginia 24482.  Defendant Smith supervises Defendants Moran and Defendant Roane among others employed by the Augusta County Sheriff's Office.

14.    Defendant Michael Roane ("Roane") is an individual who resides in Augusta County, Virginia.  Defendant Roane is employed as a Deputy Sheriff in the Augusta County Sheriff's Office.  Defendant Roane, who is sued in his individual and official capacity, may be served at his place of business in Augusta County, Virginia at the Augusta County Sheriff's Office, 127 Lee Hwy, Verona, Virginia 24482.

15.    John Does 1-20 (hereinafter "Does") include, but are not limited to, employees of, or persons acting at the direction or control of, the Augusta County Sheriff's Office, Middle River Regional Jail Correctional Employees, Private Surety Business Employees, Augusta County Governmental Employees, and other individuals who separately and together conspired with the named Defendants to injure Plaintiffs' business and/or to deprive Plaintiffs of their Constitutional rights.

### III.        FACTS COMMON TO ALL COUNTS

16.    Defendant Bourne is a general agent for Lexington National Insurance Company, and makes his living as a bail bondsman, by writing bail bonds for persons charged with criminal offenses, for a fee.

17.    The vast majority of for-profit criminal bail bonds written in Augusta County are written by Defendant Bourne, or persons acting under his direction and control.

18.    Defendant Moran worked for David Bourne as a for-profit criminal bail-bondsman, prior to becoming a Deputy Sheriff.

19.    In his capacity as a Deputy Sheriff, Defendant Moran now works for Defendant Sheriff Smith.

20.    Deputy Moran serves on a task force that is comprised of state, federal and local law enforcement officials, including the Federal Bureau of Investigation; however, Defendant Moran is not, and never has been, an FBI Agent.

21.    Plaintiffs Donovan and Moore are outspoken civil rights leaders, philanthropists and entrepreneurs who live and work in Augusta County, Virginia.

22.   Plaintiffs Donovan and Moore are an openly gay couple, a fact which is well-known in Augusta County and the surrounding area, and a fact which was specifically made known to Sheriff Smith.

23.   Plaintiff Donovan is an anchor for radio and television programs known as "Breaking Through," which are broadcast in Augusta County, Virginia.

24.   Breaking Through is a program which focuses on: the civil rights of women and minorities, including persons of African or Hispanic descent; the LGBTQ community; and on criticizing the actions of government officials which may amount to misconduct, or abridgement of civil rights.

25.   Plaintiffs have founded a series of for-profit and not-for profit companies, including Libre by Nexus, Inc. designed to provide alternatives to pretrial incarceration for persons accused of crimes, who may not be able to afford bail, and to otherwise support and uplift people struggling to overcome poverty and prejudice, particularly minorities and women.

26.   Plaintiffs' business model was inspired by Donovan and Moore's experiences of being convicted of non-violent criminal offenses some of which occurred several years ago, and most over a decade ago.  Both Donovan and Moore have since had their civil rights restored by the Governor of Virginia.

27.   Libre by Nexus Inc. is a bond securitization program for persons detained in *immigration* proceedings in the United States, the profits from which fund a number of Plaintiffs' charitable endeavors.

28.   Beginning in 2015, Donovan and Moore launched Serve by Nexus a charitable criminal bonding program designed to secure bonds for any individual who was awaiting a

criminal trial in Harrisonburg, Augusta, and Rockingham Counties, who qualified for a bond, but who remained incarcerated because he or she could not afford to post a bond.

29.    Donovan and Moore were motivated in part to start the charitable bonding program because while the population of Augusta County, Virginia is overwhelmingly Caucasian (93.7%), and an overwhelming percentage of the persons detained for inability to post bond are African American or Hispanic.

30.    Beginning in early 2016, Nexus began running advertisements on local radio and television programs advertising the charitable bonding program.

31.    Defendant Bourne was aware of and heard these advertisements.

32.    Defendant Bourne perceived the charitable bonding program to be a threat to his business.

33.    In response to the perceived threat, Defendant Bourne launched a campaign to damage Plaintiffs and destroy their reputations and business interests, in which campaign Bourne and the other named Defendants conspired and combined, and committed the unlawful acts complained of herein.

34.    On Thursday, January 28, 2016, at 10:44 AM Defendant Bourne sent an email to the President of Lexington National and other executives of the insurance company regarding the charitable bonding program, a copy of which is attached hereto as Exhibit A, (hereinafter "the 10:44 email").

35.    Bourne stated in the 10:44 email that Nexus employees had come to MRRJ, where Bourne's office is located, and bonded out several "clients" who Bourne and others "had been working with … on trying to get 7% down."

36.     Bourne stated in the 10:44 email that he had provided documentation regarding the free bonds as well as the "background element on Mike Donovan and Richard Moore" to Defendant Moran, who he described as: "Deputy Don Moran, assigned to the FBI task force, also a former agent of ours."

37.     Bourne stated in the 10:44 email that although he at first suspected Nexus of bonding individuals out of jail so that they could pay "an enormous fee for the bond on an installment plan" he was "totally off base" because Nexus was providing the bonding at no cost.

38.     Bourne speculated the 10:44 email that there must be a "return" for a charitable investment by Nexus to include money laundering, expansion of a federal pre-trial release program or an effort to expand the use of electronic monitors throughout the country for defendants released on bond.

39.     Bourne stated in the 10:44 email: *"This whole thing smells real bad and could take our business down the drain really fast....We are now getting phone calls where the caller is asking if we are the company that gets people out [of jail] for free. Nexus has a new ad running on television (trying to get a copy) indicating 'if you don't have the money for bail call us.' The word is spreading quickly."*

40.     Bourne stated in the 10:44 email: "The **Sheriff** has been made aware of Donovan's criminal history and provided the proof. There are eleven felony convictions on him and with that kind of record in his past, there is most likely fraudulent activity going on. I haven't seen much of Richard Moore. There is a new guy on the ads which goes by the name of Evan Ajin, Vice president. I don't have his [Ajin's] vitals 'yet' so I can't get his records at this time."

41.   Bourne closed his January 28, 2016 @ 10:44 a.m. email to Lexington National executives by warning: "None of us can compete with free bail, and the results of free bail, will hurt us all in the end."

42.   The 10:44 email provides evidence that Defendant Bourne intended to damage Plaintiffs' business interests for his own benefit.

43.   The 10:44 email provides evidence that Defendant Bourne had actual knowledge that there was no charge for the charitable criminal bonding program.

44.   The 10:44 email provides evidence of the involvement of Defendant Deputy Sheriff Moran and Defendant Sheriff Smith in a conspiracy to harm Plaintiffs prior to that email being sent.

45.    At 4:50 PM on January 28, 2016, Defendant Bourne forwarded the 10:44 email to Defendant Moran, stating: "Don, Please see the preceding email which may offer you some insight on Nexus. I rafted [sic] this to open discussions with the guys in Baltimore and thought you might want to read it as well." See Exhibit A attached hereto.

46.   Defendant Bourne's forwarding of the email to Moran provides evidence that Defendant Moran had actual knowledge of Bourne's intention to damage Plaintiffs' business interests.

47.   Defendant Bourne's forwarding of the email to Defendant Moran provides evidence that Defendant Moran had actual knowledge that there was no charge for the charitable bonding program.

48.   Defendant Deputy Sheriff Moran's failure to correct Defendant Bourne's statement in the 10:44 email regarding his and Defendant Sheriff Smith's involvement in Bourne's efforts to damage Plaintiffs provides evidence that Defendants Deputy Sheriff Moran and Sheriff

Smith were actually involved in the conspiracy and had actual knowledge of Defendant Bourne's motives, and the fact that there was no charge for the charitable bonding program.

49.     At 5:23 PM on January 28, 2016, Defendant Bourne sent another email to Defendant Deputy Sheriff Moran forwarding a link to the Christmas Miracle program launched by Nexus.  In this email Defendant Bourne asserted: "Turns out that the home they give away isn't actually given away. They only give it to them for 4 years rent free."  A copy of that email is attached hereto as Exhibit B.

50.     Bourne's statement in the 5:23 email regarding the Christmas Miracle program is false, malicious, reckless, and was made with the actual intent to damage Plaintiffs.

51.     The Christmas Miracle home give-away program was patterned after the Habitat for Humanity home give away program, which requires a period of time to pass before the home's inhabitants can take full title to properties due to a concern for the recipient's ability to initially manage home ownership and the possibility of third parties taking advantage of the new home owner. After that period of time, the home is titled in the recipient's name.

52.     Defendant Bourne knew or should have known that his statement in the 5:23 email regarding the Christmas Miracle program was false.

53.     Defendant Bourne further suggests in his 5:23 email that Plaintiffs are engaged in criminal activity, stating: "Could someone then deposit dirty money into an account and claim it as rental income to clean the money up?"

54.     Defendant Bourne's suggestion of criminal activity on the part of Plaintiffs is false, malicious, and reckless.

55. Defendant Bourne knew or should have known that his suggestion in the 5:23 email that Plaintiffs were involved in criminal activity was false.

56. Plaintiffs were damaged by Defendant Bourne's false and defamatory statements.

57. On January 29, 2016, Defendant Bourne sent another email to Defendant Deputy Sheriff Moran forwarding links to two newspaper articles.  The first article did not relate to Nexus.  Defendant Bourne notes in the email that the second article indicated that Nexus made a profit from its immigration bail program that utilized electronic monitors.  In that email, Defendant Bourne pointed out that "ICE [US Immigration Officials] states that it is perfectly legal to put them [immigration detainees] on monitors…." See Exhibit C attached hereto.

58. Defendant Bourne's January 29, 2016 provides evidence that Defendants Bourne and Moran were aware that Plaintiffs were acting legally in the transaction of their business.

59. By January 29, 2016, according to the January 28, 2016 @ 10:44 email, Defendant Sheriff Smith was in the loop of the communications between Defendants Bourne and Moran, and had actual knowledge of the lawful nature of Plaintiffs' business activities.

60. On February 5, 2016, Defendant Bourne forwarded a 2012 news story about Nexus by a Harrisburg news outlet to Defendant Deputy Sheriff Moran. The forwarded article, located at http://www.whsv.com/home/headlines/GPS-Bracelets-Allow--163777136.html bore the headline "GPS Bracelets Could Help Jail Overcrowding and Save Tax Money." See Exhibit D attached hereto.

61. The 2012 article quoted Plaintiff Donovan in the second paragraph as saying if an inmate cannot afford to pay bond, Nexus will cover the fee as long as the defendant will wear a GPS device.  The article also quoted Plaintiff Donovan *in 2012* as stating that if an

inmate can afford to pay, the inmate would bear the cost of the monitoring of approximately $11 day so there would be no burden on the taxpayers.

62.   As evidenced by the January 28, 2016 email, at the time Defendant Bourne sent the 2012 news story to Defendant Deputy Sheriff Moran, both Defendant Bourne and Defendant Deputy Sheriff Moran knew that there was no charge for the charitable criminal bonding program.

63.   Defendant Deputy Sherriff Moran responded to Defendant Bourne's February 5, 2016 email falsely stating that "seems their [sic] using the gps to off set not paying the fee."

64.   Defendant Bourne's email reply on that same date runs the math to calculate the potential financial gain to Nexus if the bracelet monitoring program was adopted in his area: "Yeah like I said a felony case averages about 16 months before a final disposition. That's almost $8,000." See Exhibit E attached hereto.

65.   Also on February 5, 2016, the director of the Blue Ridge pretrial services program, David Pastors, forwarded *the same 2012 news article link* about Nexus to the Commonwealth Attorney for the area, Timothy Martin and the Assistant Commonwealth Attorney Alexandra Meador.  The subject matter of Pastors email concerns a case involving J.D., an incarcerated 18-year old non-Caucasian high school student who spoke little or no English who was accused of rape and was being held without bond.  The individual defendant was then represented, *pro bono,* by attorneys from Nexus Caridades Attorneys (hereinafter "Caridades").  See Exhibit F attached hereto.  The email forwarded by Mr. Pastors is evidence that Defendants Bourne and Moran deliberately spread misinformation about Plaintiffs to other local government officials and damaged Plaintiffs' reputations.

12

66.  Though it had no bearing on the guilt or innocence of J.D. or the competency of the Caridades legal team, the Pastors' email warns Mr. Martin and Ms. Meador that the Caridades legal team cannot be trusted because they are associated with Nexus.  See Exhibit F attached hereto.  Ms. Pastor's email states that Plaintiff Donovan had been a bail bondsman and that his license had been revoked.  Plaintiff Donovan has never been a licensed bondsman and has never had his license revoked.

67.  As the bond hearing date for J.D. approached, so too did the local government's scrutiny of Nexus, fueled by emails and contacts by Defendants Bourne and Deputy Sherriff Moran. On February 10, 2016, Defendant Bourne sent an email to Commonwealth Attorney Martin (whom he addressed as "Tim") stating: "Below are several links about Nexus. As I said the President is Micheal Donovan and the Executive Vice President is Richard Moore. Both are convicted felons multiple times and they are running a scam on the communities of Harrisonburg, Rockingham, Staunton, Waynesboro and Augusta County and I fear that other locations are soon to come…I would prefer that you get the criminal history stuff from Don Moran at ACSO 540-457-9928. I printed all the dispositions but I'm sure that the most accurate records are what he pulled. Make sure you take an hour and watch the 2 episodes of Breaking Through at the bottom of the list. That will give you a clear picture of what they are trying to achieve. Keep in mind when you are watching that these are con men and wicked smart. They make themselves out to be pillars of the community with all the stuff they give away but read the fine print. One question to ask is, where does the money come from?"  See Exhibit G attached hereto.

68.  Remarkably, even though Defendant Bourne had specifically informed the Lexington National executive team in writing on January 28, 2016 that he verified that Nexus was

not, in fact, charging any fees for its free criminal bail bond program, Defendant Bourne knowingly provided false information by advising the Commonwealth Attorney Martin that Nexus *was* charging a fee for its free criminal bonding program, citing a 2012 article: "They [Nexus] will use free bail as the hook with an agreement that the defendant wear and pay for an electronic monitor at $11.00 per day. The average life of most case [sic] is about 12 months. $11.00 per day x 365 is $4,015. Please see my illustration below as compared to the bail bond itself. There is certainly a place for them in some cases but electronic monitors should only be used when it is mandated by the court. Otherwise it becomes a form of extortion by making the defendant pay $420 per month under threat of being returned to jail."  See Exhibit G attached hereto.

69.     As set forth in Exhibit C, Defendant Bourne knew, but failed to disclose to Mr. Martin, that the use of GPS equipment by Libre by Nexus in the immigration context had been determined to be "perfectly legal" by U.S. Immigration officials. Also as set forth in Exhibit A, Defendant Bourne knew, but failed to disclose to Mr. Martin, that Nexus did not charge for the bonds extended to individuals in the charitable criminal bonding program and did not require recipients of the charitable criminal bonds to wear GPS equipment.

70.     Between February 10, 2016, and April 24, 2016, Defendant Moran approached two employees of Nexus and falsely identified himself as an F.B.I. agent.

71.      Defendant Moran asked the Nexus employees to assist him in an investigation of Nexus.

72.     Defendant Moran told both employees that he had no evidence of any criminal wrong doing by Nexus and needed help finding it.

73.    Defendant Moran's conduct harmed Plaintiffs by damaging their reputations amongst their employees.

74.    On Monday, February 15, 2016, Defendant Bourne forwarded to the Augusta County Commonwealth's Attorney Tim Martin, a link to the Nexus television show (Breaking Through), Episode 3. Bourne warned Mr. Martin: "Looks like they [Plaintiffs] are going after MRRJ [Middle River Regional Jail] over the next three weeks." See Exhibit H attached hereto.

75.    Also on Monday, February 15, 2016, Defendant Bourne forwarded the Breaking Through, Episode 3 link to Jack Lee, the Jail Superintendent for MRRJ.  See Exhibit I attached hereto.  Mr. Lee, in turn forwarded Mr. Bourne's email to Steve Owen, the City Manager for the City of Staunton, Virginia, with the message:  "Hey Boss, [w]hen you get a chance and a little time watch the 3 episodes attached. This group [Nexus] needs to be watched closely. They could be recklessly dangerous to the whole criminal justice system."  See Exhibit J attached hereto.

76.    Episode 3 of the "Breaking Through" program, hosted by Micheal Donovan, highlighted reports of an alarming pattern of injury and death at MRRJ and provided a number for persons in the community to call if they had information about injuries or deaths at the jail. Episode 3 of the "Breaking Through" program was Constitutionally protected Free Speech.

77.    Later in the evening of February 15, 2016, Defendant Bourne's email was forwarded by Mr. Lee to most of the leadership of the MRRJ and to Eric Young, a corporal with the Augusta County Sheriff's Office. See Exhibit K attached hereto. Significantly, the MRRJ is the facility that was then being used to house the Nexus Caridades Client, J.D.

15

Corporal Young is an officer who has been assigned to the J.D. case. Corporal Young had also personally visited the home of Micheal Donovan on two occasions to request that private security guards retained by Mr. Donovan (who retained private security for himself and other Nexus employees because he feared for his safety, the safety of his family, and the safety of the employees of Nexus) provide their identification information to him. On one of those occasions Corporal Young identified himself as working for the FBI in an attempt to gather personal information of security personnel.

78. Defendants reacted to the "Breaking Through" free speech by unlawfully obtaining restricted and private information about its hosts. On February 15, 2016, the Augusta County Sherriff's Office accessed David Briggman's (a host of "Breaking Through") Department of Motor Vehicle's record. See Exhibit L attached hereto. Virginia law restricts law enforcement personnel's access to citizens' driving history to lawful investigations. On February 15, 2015, the Sheriff's Office's access to David Briggman's driving record was not for lawful investigative purposes, but was instead intended to obtain information to assist Defendants in silencing protected free speech which was critical of the Augusta County criminal justice system.

79. On or about February 18, 2016, Erik Schneider[1], Director of Risk Management for Nexus, and other representatives of Nexus visited with Defendant Sheriff Smith to report the employee contacts by Defendant Moran, and to complain that Defendant Moran had held himself out as an F.B.I. agent and stated he was conducting an investigation of Nexus, which damaged the reputation of Plaintiffs, and caused significant disruption to Plaintiffs' business, and emotional distress to Plaintiffs' employees.

---

[1] Mr. Schneider is also a licensed private investigator.

80.   At the meeting on February 18, 2016, Defendant Sheriff Smith thanked Mr. Schneider, apologized for Defendant Deputy Sheriff Moran's conduct, and assured Mr. Schneider that he would put an immediate stop to it.

81.   Unfortunately, contrary to his statements to Mr. Schneider, Defendant Sheriff Smith did nothing to curb Defendant Deputy Sheriff Moran's unlawful and damaging actions.

82.   On the same day that Mr. Schneider lodged a complaint against employees of the Sheriff's Office, February 18, 2016, law enforcement officials within the Sheriff's Office responded to Mr. Schneider's visit by pulling confidential DMV driving records for Mr. Schneider.[2] See Exhibit M attached hereto. Here again, the purpose of the Sheriff's Office's access to restricted information was to obtain information to silence critics of the Sheriff's Office and the local criminal justice system. The access to Mr. Schneider's driving records was the second by Sheriff's Office personnel in thirty (30) days.

83.   On February 19, 2016, Plaintiff Donovan invited Defendant Sheriff Smith to his corporate offices to discuss the mission of the Nexus family of companies. Defendant Sheriff Smith arrived with his Chief, Captain William D. Spence. Attending the meeting with Defendant Smith and Captain Spence was, among others, the former General Counsel for Nexus Services Inc., Gordon Turner. Mr. Turner is an African American attorney.

84.   At the February 19, 2019 meeting, Mr. Turner explained to Defendant Sheriff Smith and Captain Spence that Nexus planned a series of educational events between the immigrant community and law enforcement to assist immigrants from Mexico and Central America in understanding cultural norms in the United States. Mr. Turner, who has lived in

---

[2] The Augusta County Sherriff's Office had previously pulled Mr. Schneider's DMV information about a month before on January 21, 2016.

Mexico and Central America, stated that in those cultures (unlike most of the U.S.) it would not be uncommon for youth and adults to carry machetes with them to cut foliage or fruit or to obtain coconuts from trees.  In response, Capt. Spence asked Mr. Turner if he (Turner) could climb coconut trees and proceeded to flap his arms and make "monkey" sounds.

85. The racially charged remarks and insulting pantomime by Capt. Spence were made in the presence of Defendant Sheriff Smith.

86. Defendant Sheriff Smith did nothing to curb or apologize for Capt. Spence's racially discriminatory conduct.

87. Defendant Sheriff Smith's tolerance of his subordinate Capt. Smith's behavior constitutes an adoption of it, and is evidence of Defendant Sheriff Smith's own racial animus towards non-whites.

88. As the investigation stirred by Defendants Bourne and Moran intensified against the principals of Nexus in mid-February 2016, so too did the investigation of the attorneys for the Nexus Caridades Client, J.D.

89. The bond hearing for J.D. began on February 11, 2016, but had to be continued mid-hearing to February 25, 2016.  On February 25, 2016, Defendant Roane with the Augusta County Sheriff's Office sent an email with an attached Word document to Defendant Deputy Sheriff Moran at donald.moran@ic.fbi.gov.

90.  The email stated that the attached was a document regarding "Events of 2-25-16."  The report of Defendant Roane submitted to Defendant Deputy Sheriff Moran is attached as Exhibit N attached hereto. Defendant Roane stated that he was assigned to the investigation of the Nexus Caridades Client and he was asked by the Commonwealth

18

Attorney Martin to surveil the bond hearing: "I arrived at the courthouse at approximately 0900 hours. As I entered the upstairs portion of the building, I observed several (approximately 15-20) Hispanic descent persons waiting directly outside the court room. I entered the room and was positioned in the front row. A few minutes later, the proceedings began. All of the persons that were waiting outside, appeared in in the courtroom and took a seat on the left side of the gallery." See Exhibit N attached hereto.

91.   That email and the attachment were copied to Defendant Sheriff Smith and Captain William Spence of the Augusta County Sheriff's Office.

92.   Defendant Roane continued his memo of February 25, 2016, admitting that he was familiar with Defendant Moran's investigation of Nexus and that Nexus "is the same company that has employed [J.D.'s] attorney. *Based on my limited knowledge, I took several photographs of the persons in the courtroom and forwarded them via text to Inv. Moran. We exchanged a few text messages. Inv. Moran encouraged me to take as many photographs as possible to assist in his investigation. I then contacted Lt. Leveck via text and requested that he and other Investigators respond to the Wharf parking lot in a covert manner. I requested that they observe the group and photograph vehicles and tags to assist Inv. Moran."* [Emphasis added.] See Exhibit N attached hereto. The photographing of persons in a courtroom in cases involving alleged sexual crimes is strictly forbidden by Virginia law.

93.   As he was leaving the courtroom on February 25, 2016, Defendant Roane was approached by Eric Schneider, who introduced himself to Defendant Roane, and asked for his name. Defendant Roane refused to tell Mr. Schneider his name. In his report, Defendant Roane stated that after his encounter with the defense investigator, he (Roane)

"went into the building across the street and photographed the male that I had just encountered. I called Inv. Moran via phone and explained what had just occurred." Defendant Roane stated that the photographs taken in the courtroom bond hearing and of the attorneys leaving the hearing were forwarded to "Inv. Moran." See Exhibit N attached hereto.

94. The case involving J.D., an 18-year old high school student, concerns allegations of an acquaintance rape, based on intoxication. It is neither a gang case, nor a drug case. There was no legitimate reason to photograph the individuals attending the hearing, or the legal team (which included Mr. Turner), nor was there any reason to take down the license plates of the vehicles belonging to those persons.

95. Bond was denied for J.D. during the hearing of February 25, 2016. When the Commonwealth Attorney was congratulated in an email on his performance during the bond hearing by Debbie Walker, a pre-trial program manager for Blue Ridge Court Services (the entity that was forwarded information by David Bourne just a few weeks earlier), Commonwealth Attorney Tim Martin responded: "I really can't stand these people [Nexus] and have no clue where the money comes from." See Exhibit O attached hereto.

96. After the bond hearing on February 25, 2016, Mr. Schneider visited the Sheriff's Office to register a complaint with the Sheriff that Defendant Roane refused to identify himself at the courthouse when asked for his identity. Mr. Schneider met with Sheriff Smith and Capt. Spence. At that time, Mr. Schneider handed Captain Spence his business card, which identified Schneider as an employee of Nexus. **In the presence of Sheriff Smith**, and in a loud and menacing voice with aggressive physical gestures, Capt. Spence told

Mr. Schneider that investigating a law enforcement officer was 'a good way to get yourself shot.'  Mr. Schneider perceived the statement by Captain Spence as a threat against his life.  When Mr. Schneider expressed alarm and fear, Capt. Spence stated that he did not mean that he intended to shoot Mr. Schneider, but that investigating law enforcement officers was 'not something he [Schneider] wanted to be doing.'  Based on the tone and inflection of Captain Spence's voice and his body language, Mr. Schneider interpreted the follow up statement from Captain Spence as a threat that the Sheriff's Office would punish any person who investigated Sheriff's Office personnel.  Rather than allay the concerns of Mr. Schneider, the comment was intended to, and did, increase the fear and anxiety of Mr. Schneider regarding any efforts by him or his employer to investigate allegations of wrongdoing by the Sheriff's Office.  Once again, even though Sheriff Smith observed and heard the threatening conduct by Captain Spence, he did nothing to admonish the conduct of his subordinate.

97.    On April 20, 2016, two Special Conservator of the Peace (hereinafter "SCOP") officers with the knowledge and at the direction of the Augusta County Sheriff's Office, approached Plaintiffs Donovan and Moore's personal shared residence. The SCOP officers demanded that private security guards at the Donovan/Moore residence provide identification and an explanation for why they were there.

98.    On April 20, 2016, a law enforcement official advised the private security guards at the Donovan/Moore residence that the Augusta County Sheriff would be paying more visits to the Donovan/Moore residence on future occasions. The private security guards communicated the visits and the comments by law enforcement to Donovan and Moore.

Donovan and Moore interpreted the frequency of the visits and the comments as a threat to their physical safety and well being.

99.     On April 21, 2016, two SCOP officers visited the Donovan/Moore residence and demanded Donovan explain the presence of the private security guards at the home.

100.    Also, on April 21, 2016, an individual identified as Corporal Young of the Augusta County Sheriff's Office visited the Donovan/Moore residence and inquired about the presence of the same security guard service.

101.    On April 23, 2016, Corporal Young visited the Donovan/Moore residence and demanded that the same security guard service again show identification.

102.    On April 25, 2016, an Augusta County Sheriff's cruiser slowly made two drive-by passes at the entrance of Nexus Services' corporate campus. The road beyond the campus is a dead end, and the police cruisers slowed each time while passing the campus' entrance.

103.    On April 26, 2016, an Augusta County Sheriff's cruiser slowly made a drive-by pass in the cul-de-sac where the Donovan/Moore residence is located.

104.    On May 1, 2016, an Augusta County Sheriff's cruiser slowly made two drive-by passes at the entrance of Nexus Services' corporate campus. The road beyond the campus is a dead end, and the police cruisers slowed each time while passing the campus' entrance.

105.    On April 6, 2016, a representative of Nexus Services, Inc. sent a Freedom of Information Act (FOIA) request to Augusta County seeking all communications that referred to Nexus or its principals. See Exhibit P attached hereto. The County advised Nexus that it would produce the records on a usb drive a few weeks later. Some of the above referenced Exhibits were contained on the usb drive in the documents produced by the County on April 22, 2016 in response to the FOIA request by Nexus.

106.    The usb drive produced to Nexus also contained many other documents that were not related to Nexus (including intelligence reports for the Virginia State police fusion center, investigation reports from state and federal investigation agencies from ongoing and past investigations, social security numbers, dates of birth and other personally identifiable information for many other individuals including inmates housed in the Middle River Regional Jail since 2011).   After discovering the unrelated material on the usb drive, Nexus, through counsel, turned over the data to the United States Attorneys' Office in Roanoke, on Saturday, April 30, 2016.   The U.S. Attorneys' office advised that it may notify the local authorities in Augusta County, Virginia of the overbroad disclosure. Nexus wanted to ensure that any breaches of confidential or secure information be discovered and rectified immediately by proper authorities.   The County's disclosure of certain information on the usb drive constituted violations of state and federal law.

107.    On the evening of May 8, 2016, just one week after the U.S. Attorney's office advised that it may alert Augusta County officials about the improper usb drive disclosures, representatives of the Augusta County Sheriff's Office escalated physical intimidation efforts against Plaintiff Donovan.   Defendant Roane and another Augusta County Sheriff's Office employee, who could not then be identified, engaged in a dangerous display of brute force on the roadway when interacting with Micheal Donovan and his security detail.   Following standard security service protocol, Donovan's security detail followed Donovan's car at a close distance when traveling on the highway.   Defendant Roane in one vehicle and another marked Augusta County Sheriff's Office vehicle, made erratic driving moves to at first surround Donovan and his security detail and then to take extremely aggressive maneuvers to insert a car between Donovan's car and his security

detail. Defendant Roane then pulled alongside Donovan's car so that he could see who was confronting him.  The point having been made, Defendant Roane and his colleague departed at the next exit following the driving stunt.  The aggressive driving incident by Defendant Roane was intended to, and did cause, fear and anxiety by Mr. Donovan and also placed Mr. Donovan and other members of the driving public at risk for physical harm.

108.   On May 18, 2016[3] at approximately 2:00 p.m., Corporal C. J. Deitz of the Augusta County Sheriff's Office, while wearing a Sheriff's Office uniform and driving a county vehicle, visited the Nexus' corporate campus and insisted on personally delivering a document to Micheal Donovan, Richard Moore or David Briggman (Director of Special Operations for Nexus).  See Exhibit Q attached hereto.  The use of a uniformed officer of the Sheriff's Office to deliver a letter to Nexus employees at the Nexus campus was not appropriate and was intended to and did cause fear and intimidation for employees of Nexus.

109.   Said letter implied criminal prosecution pursuant to Va. Code 58.1-3, unless Nexus returned to Augusta County the usb flash drive and destroyed all copies, which would essentially require Nexus to destroy evidence of County Officials' unlawful acts[4].

110.   Va. Code § 58.1-3, which makes it unlawful to disseminate or publish confidential tax information, does not create any duty to return any items to Augusta County.  Moreover,

_____

[3] Also on May 18, 2016, an officer working for or on behalf of the Augusta County Sheriff's Office parked outside of the home of Plaintiff's employee Mr. Eric Schneider and followed him when he left his residence for a considerable distance until he reached his corporate office.

[4] As previously discussed, Nexus had already presented the data to the U.S. Attorney's office on April 30, 2016. Nexus had been instructed by state police officers to retain evidence of the improper disclosures by the County as it opened an investigation of the matter.

the release by Augusta County personnel of information on the usb drive of apparently confidential *federal* criminal investigations indicated that Augusta County personnel may be guilty of not only negligent disclosures but of disclosures that may be violative of federal law.[5]  The apparent purpose of the May 18, 2016 letter and personal visit by Corporal Dietz was to continue the campaign of fear and intimidation against Plaintiffs, and to seek to cover up the Defendants' actions and obstruct justice by forcing Plaintiffs to destroy evidence of potential criminal acts committed by County employees.

111.  On May 18, 2016, Plaintiffs filed suit against the named Defendants in state court in Augusta County, Virginia alleging violations of state law ["State Lawsuit."][6]

112.   On the day of and following the filing of the State Lawsuit, representatives of the Augusta County Sheriff's Office continued to visit the home of Plaintiffs Moore and Donovan, parked in front of Nexus Risk Manager Mr. Schneider's personal residence and followed him to work, and continued to drive by the corporate offices of the Plaintiffs in an effort to harass and intimidate Plaintiffs.

113.  By way of example and without limitation, on May 28, 2016 (a Saturday on the Memorial Weekend), two uniformed deputies of the Augusta County Sheriff's Office in marked government cars made a rapid approach to the personal residence of Moore and Donovan in tactical formation and blocked the ingress and egress to their residence. Plaintiffs Moore and Donovan were in the home, and witnessed the police officers arrive at their home.  Plaintiffs perceived the arrangement of police cars as blocking their ability to leave their home, which constituted an unlawful detainment.  The Deputies advised the

---

[5]  Va. Code Ann. § 2.2-3815 protects, among other things, the disclosure of social security numbers. The usb contained such personal protected information.

[6]  The State Lawsuit was nonsuited on June 2, 2016, and the claims contained therein were incorporated into the instant lawsuit to preserve judicial and litigant resources.

Plaintiffs' personal security guards that their visit was simply to determine what type of car Mr. Donovan drove, despite the fact that they had already run the details on his plate information two months earlier in March

114.   Defendant Smith had actual and constructive knowledge of these and other "drive-by" incidents that were intended to and did cause fear and anxiety in Moore and Donovan and the officers, directors and employees of Nexus.   The Sheriff's Deputies' used their official county vehicles to make the harassing drive-bys.   Some or all of the police cars are equipped with global positioning devices.   In addition, as was addressed on an episode of "Breaking Through" which featured an Augusta County Deputy Sheriff interview, there are at most seven (7) officers on duty during a fully staffed shift to cover the entire county (over 1,000 square miles).   The large area of coverage made it difficult for officers to respond timely, and Sherriff Smith would have had to account for his employees' whereabouts.

115.   The "Breaking Through" episodes were frequently critical of the Sheriff's Office's investigative activities.

116.   Defendant Smith listens to and watches broadcasts of "Breaking Through."

117.   By way of example only, on October 9, 2016, Donovan, along with others, broadcasted a live episode of "Breaking Through" remotely from Orlando, Florida.   Donovan began this program discussing the "trust relationship between cops and people" and that "police play an important role in protecting the people by ensuring that the rule of law works." Donovan's broadcast discussed the sometimes "strained relationship" that police have with some communities in the United States, particularly minority communities or communities with a lower economic status.   Donovan specifically discussed an incident

26

in July 2016, where the Sherriff of Augusta County arrested several undocumented immigrants at a highway rest area for "looking furtive." Donovan notes that being undocumented is not a crime and police officers simply do not have the authority to arrest people they believe are undocumented. Donovan noted on this audio that he had spoken out against the actions of the police force in Augusta County.

118. During this October 9, 2016 broadcast, beginning approximately 14:10 minutes into the broadcast, Donovan poked fun at Defendant Sherriff Donald L. Smith for a Facebook post in which he clearly made an error in time. Defendant Smith's 8:43am Facebook post read as follows: "MEDIA RELEASE: On October 9, 2016 at **1:03 PM**, deputies responded to the Skyline Motel located at 2497 Jefferson Highway for an unknown situation. When deputies arrived at **1:13 PM**, they found a deceased male, and a homicide investigation is ongoing. Two females and two males have been detained and transported to the Augusta County Sherriff's Office for questioning. The identity of the victim and the suspect(s) will be released at the conclusion of the investigation."

119. On the program, the speakers note that the Sherriff made the above Facebook post about "37 minutes ago," demonstrating that the time that these comments were made was about 9:20 am. The speaker notes that the Sherriff must be "predicting that 1:03 this afternoon, they are going to receive a phone call to go to a hotel in Augusta County, and when his deputies get there at 1:13 PM they are going to find a dead body there." The speakers poked fun at the Sherriff's apparent omniscient qualities given that it was only the morning.

120. At 9:33am, Augusta County Sherriff Donald L. Smith Facebook post changed to read as follows: "MEDIA RELEASE: On October 9, 2016 at **1:03 AM**, deputies responded to

the Skyline Motel located at 2497 Jefferson Highway for an unknown situation. When deputies arrived at **1:13 AM**, they found a deceased male, and a homicide investigation is ongoing. Two females and two males have been detained and transported to the Augusta County Sherriff's Office for questioning. The identity of the victim and the suspect(s) will be released at the conclusion of the investigation." (emphasis added) See Exhibit R attached hereto.

121.   At approximately 37:33 minutes into the October 9, 2016 broadcast of "Breaking Through," which makes the time during the live broadcast approximately 9:43 am, the speakers announced that "the Sheriff changed his timeline. Thanks Sherriff! I told you he was listening."

### Sheriff's Deputies Steer Business to Defendant Bourne

122.   A Virginia licensed bail bondsman shall not "Solicit bail bond business or have any person solicit on his behalf by directly initiating contact with any person in any court, jail, lock-up, or surrounding government property." 6 VAC-250-260.

123.   A Virginia licensed bail bondsman shall not "Leave any type of advertising material in any court, jail, lock-up or surrounding government property." 6 VAC-250-260.

124.   Defendants Smith, Moran and Roane, along with other deputies in Augusta County law enforcement, encouraged, and even steered, arrestees to use the bonding services provided by Defendant Bourne.

125.   Defendant Bourne individually, and through his family members, controls a disproportionate share of the bonding business.

### Actions Taken By Defendants Following Filing of Federal Complaint

28

126.   Since the filing the instant action, Defendant Smith has held at least one meeting with Plaintiffs Donovan and Moore's neighbors in their neighborhood, encouraging Plaintiffs' neighbors to make complaints about Plaintiffs to the media in an effort to unlawfully intimidate and harass Plaintiffs.

127.   Since the filing the instant action, Plaintiffs and staff of Nexus Services continue to be followed and surveilled by Augusta County Sheriff's Deputies, at their homes, at their place of work and other places, in an effort to unlawfully intimidate and harass Plaintiffs.

128.   Plaintiffs believe that unless the Court enjoins Defendants from further unlawful and harassing actions against Plaintiffs, these unlawful threatening and intimidating acts will continue unabated by Defendants.

129.   Defendant Smith has been informed by Plaintiffs and other employees or agents from the Nexus family of companies that the conduct of the Deputies in his department is at the very least inappropriate, if not illegal.

130.    At all times material to this Complaint: a) Defendant Smith had actual or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of harm to the constitutional rights of citizens like the Plaintiffs; b) Defendant Smith's response to the knowledge of his subordinates behavior was so inadequate as to show deliberate indifference or tacit authorization of the offensive conduct of personnel under his control; and c) there was an affirmative link between Defendant Smith's inactions and harm to the constitutional rights of the Plaintiffs.

131.   Defendant Moran's actual knowledge of the contents of Exhibit A and his failure to disclose Defendant Bourne's improper commercial motives, and failure to disclose the

lawful nature of Plaintiffs' business as determined by Federal immigration authorities, constituted fabrication of evidence.

132. Defendant Moran's failure to disclose the facts set forth in the preceding paragraph, coupled with his improper efforts to cause an unwarranted and unlawful investigation into Plaintiffs' business, caused other Defendants including other named Defendants and John Does 1-20 to unlawfully detain Plaintiffs and to suppress Plaintiffs' First Amendment rights and cause other harm to Plaintiffs.

133. Defendants' actions caused, and continue to cause, economic and other harm to Plaintiffs, including but not limited to substantial costs for private security, fear for their safety and physical well being, damage to employee relationships, increased operational costs, and damage to their individual and corporate reputations.

### III.   CAUSES OF ACTION

#### Count I – Constitutional And Civil Rights Violations Pursuant To 42 U.S.C. Sections 1983, 1988
*VIOLATIONS OF THE FIRST AND FOURTH AMENDMENTS*
(Against Defendants The Sheriff's Office, Smith, Moran, Roane
And John Does 1-20 [Collectively "Sheriff's Office Defendants"])

133. The allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth herein.

134. Plaintiffs' individual and collective speech and conduct in hosting and sponsoring the Breaking Through radio and television programs constituted free speech protected by the First Amendment of the United States Constitution.

135. Plaintiffs' individual and collective speech and conduct in advertising the free criminal bail bonding program constituted commercial free speech which was protected by the First Amendment of the United States Constitution.

136.   Plaintiffs' individual and collective speech and conduct in filing the lawsuit in state court in Augusta County against Sheriff Smith and Deputies Moran and Roane constituted free speech which was protected by the First Amendment of the United States Constitution (the Petition Clause).

137.   Plaintiffs' speech and conduct in filing the initial complaint in U.S. District Court in the Western District of Virginia against Sheriff Smith and Deputies Moran and Roane constituted free speech which was protected by the First Amendment of the United States Constitution (Petition Clause.)

138.   The Sheriff's Office Defendants were each individually and collectively operating under the color of law and for improper motives designed to deprive the Plaintiffs of their constitutional rights when they engaged in the following activities:

a.   Disseminating information to governmental officials about Plaintiffs  that was then known to be false and which was calculated to and did damage  the business interests and reputations of the Plaintiffs, including but not limited to characterizing a free criminal bail bonding program as a for-profit criminal bonding program, describing the for-profit immigration bonding securitization program as a criminal enterprise when it was known to be a lawful activity;

b.   Failing to correct or to prevent the further dissemination of incorrect and damaging information about Plaintiffs by Defendant Bourne;

c.   Making implied threats of physical harm for investigating police officers;

d.   Failing to address and reprimand implied threats of physical harm for investigating police officers;

31

e. Making blatant racial comments and gestures in reference to Plaintiffs' employees;

f. Failing to address and reprimand racial comments and gestures in reference to Plaintiffs' employees;

g. Accessing Plaintiffs' and their employees' confidential driving records for improper purposes and in violation of Virginia law;

h. Frequently visiting Plaintiffs' residence and business locations in uniform and in marked government cars for no legitimate government purpose;

i. Aggressive driving behavior which threatened the safety of Plaintiff Donovan and was intended to and did intimidate Plaintiffs;

j. Photographing Plaintiffs and the Nexus Caridades employees in a courtroom; and

k. Blocking the entrance to Donovan and Moore's home with government cars.

139. Defendant Sheriff Smith had actual knowledge of his subordinates' misconduct as referenced in the preceding paragraphs, he failed to adequately address the misconduct of his subordinates, and his failure to address the conduct of his subordinates was intended to, and in fact, caused harm to the Plaintiffs.

140. The aforementioned activities by the Sheriff's Office Defendants were intended to chill the First Amendment Rights of the Plaintiffs.

141. Chilling the Plaintiffs' protected First Amendment speech was a substantial or motivating factor for the conduct of the Sheriff Office Defendants.

142. The Plaintiffs' protected First Amendment speech was in fact chilled by these Defendants.

143.   The activities of these Defendants were in retaliation for Plaintiffs' exercise of their protected First Amendment Speech.

144.   The activities of the Defendants in blocking the entrance to the Plaintiffs' home constituted a violation of Plaintiffs' rights under the Fourth Amendment of the United States Constitution.

145.   These Defendants acted maliciously and with intent to harm the Plaintiffs.

146.   These Defendants in fact proximately caused harm to Plaintiffs in the form of actual damages, nominal damages, intense emotional distress, humiliation, fear and other physical and mental anguish.

147.   Plaintiffs are entitled to an award of actual, nominal and/or compensatory damages, punitive damages, and attorneys' fees and expenses of litigation against these Defendants in an amount to be determined at trial;

148.   Plaintiffs request that this Court enjoin these Defendants from further and additional infringement of their Constitutional rights.

### Count II – Defamation (Under Virginia Common Law)
*(Asserted by Plaintiffs Against Defendant Bourne)*

149.   The allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth herein.

150.   Bourne made various defamatory statements about Plaintiffs. These statements include conveying that Plaintiffs were: a) laundering money; b) con artists; c) running a scam; and d) engaged in extortion.

151.   Bourne's defamatory statements were disseminated to third parties.

152.   Bourne's defamatory statements were seen by persons other than Plaintiffs.

153.   Bourne's defamatory statements were false.

154.    Bourne made the statements knowing them to be false or ibn reckless disregard for the truth.

155.    Bourne acted willfully and maliciously.

156.    If Bourne believed the statements to be true, he lacked reasonable grounds for such belief, and acted recklessly in failing to ascertain the facts on which the statements were based.

157.    Plaintiffs were damaged as a result of Bourne's actions.

158.    Plaintiffs are entitled to recover compensatory and punitive damages, costs and attorneys' fees.

## Count III – Civil Conspiracy Claim
### *(Asserted by All Plaintiffs Against All Defendants)*

159.    The allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth herein.

160.    Defendants had a mutual interest in, and in fact took steps to, silence Plaintiffs' "Breaking Through" programming, which was critical of the for-profit criminal bonding industry, the Sheriff's Office, and the MRRJ.

161.    Defendants had a mutual interest in harming Plaintiffs' financially, and took steps to damage the reputation and business interests of all Plaintiffs.

162.    Defendants combined, associated, agreed, mutually understood and concerted together for the purpose of willfully and maliciously injuring Plaintiffs in their reputation, trade, business or profession.

163.    Plaintiffs were damaged by Defendants' actions.

164.    Plaintiffs are entitled to recover three-fold damages, costs, and attorneys' fees pursuant to Va. Code §18.2-499 and 500.

## JURY DEMAND AND PRAYER FOR JUDGMENT

Plaintiffs hereby demand a TRIAL BY JURY.

WHEREFORE Plaintiffs respectfully request that this Court:

1) Enjoin Defendants from further threatening, harassing or otherwise violating Plaintiffs' rights;

2) Enter judgment against each of the Defendants, jointly and severally;

3) Award Plaintiffs compensatory and other damages to be shown at trial;

4) Award Plaintiffs' their  attorneys' fees and costs of litigation;

5) Award Plaintiffs' treble damages against the Defendants;

6) Assess punitive damages to punish the Defendants; and

7) Provide such other and further relief as may be appropriate under the circumstances of this case.

 Respectfully submitted this 30th day of January, 2017.

NEXUS SERVICES, INC., MICHEAL
DONOVAN and RICHARD MOORE

**TUCKER GRIFFIN BARNES, P.C.**
By */s/ André A. Hakes*
André A. Hakes (VSB# 40358)
TUCKER GRIFFIN BARNES, P.C.
307 West Rio Road
Charlottesville, VA 22901
T: (434) 951-0867; F: (434) 951-0884
ahakes@tgblaw.com
*Counsel for Plaintiffs*

**GORBY, PETERS & ASSOCIATES, LLC**
By */s/ Mary Donne Peters*
Michael J. Gorby (GA Bar #: 301950 PHV)
Mary Donne Peters (GA Bar #: 573395 PHV)
Amy C. M. Burns (GA Bar #: 425851 PHV)

Two Ravinia Drive, Suite 1500
Atlanta, Georgia 30346-2104
T: (404) 239-1150; F: (404) 239-1179
mgorby@gorbypeters.com
mpeters@gorbypeters.com
aburns@gorbypeters.com
*Counsel for Plaintiffs*

# EXHIBIT "A"

| From: | Dave Bourne |
|---|---|
| To: | dmoran@co.augusta.va.us |
| Subject: | FW: Nexus |
| Date: | Thursday, January 28, 2016 4:50:45 PM |
| Attachments: | BAIL AGENT - ZIMMERMANS BONDING.pdf |
| | RECOGNIZANCE - ██████████ |
| | RECOGNIZANCE ██████████ |
| | HAGEL - EMAIL NEXUS.pdf |
| | 6VAC20-250-260 - SOLICITATION OF BUSINESS.pdf |

Don,

Please see the preceding email which may offer you some insight on Nexus. I rafted this to open discussions with the guys in Baltimore and thought you might want to read it as well.

Best,

*David L. Bourne*

David L. Bourne, General Agent
(Office) 540-886-5447 (Mobile) ██████████
(Facsimile) 540-886-5449



The information contained in this transmission is privileged and confidential.  It is intended for the use of the person(s) named above.  If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited.  If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message

**From:** Dave Bourne [mailto:dave@1800forbail.com]
**Sent:** Thursday, January 28, 2016 10:44 AM
**To:** Randy Parton (RParton@lexingtonnational.com) <RParton@lexingtonnational.com>
**Cc:** 'Ronald A. Frank' <RFrank@lexingtonnational.com>; Nick Wachinski <NWachinski@lexingtonnational.com>; MARK HOLSCHNEIDER (mholtschneider@lexingtonnational.com) <mholtschneider@lexingtonnational.com>
**Subject:** Nexus

All,

Over the weekend we learned that Nexus made an appearance at the Middle River Regional Jail (MRRJ) located in Augusta county, which is where our office is located. We are working on confirming the identity of one of the people present, but the other one was definitely David Schneider, of Zimmerman Bail Bonds, out of Richmond, Virginia (card and bond license verification attached). They posted bail in the amount of $10,000.00 for ██████ ██████ (recognizance attached), with fees being paid by Nexus and without an indemnitor. While they were there they also bonded a girl by the name of ██████████ in the amount of $2,000.00 (recognizance attached) also without the fee or an indemnitor. We had been working with both clients on trying to get 7% down. Neither of the clients made direct contact to have their bonds posted by Zimmerman's.

Deputy Sheriff Don Moran, assigned to the FBI task force, also a former agent of ours, has contacted us in reference to the undertakings of Nexus and advised that the Sheriff was rather concerned with what they are doing and wanted him to look into it. I have provided him with all of this documentation as well as the background element on Mike Donovan and Richard Moore and after some further probing, the FBI <u>may</u> launch an investigation.

Back to our former client ███████████, I first talked with his son ██████, who advised that a female friend of his father gave him the number for Nexus (540-292-2321) because they get people out of jail for free. He called the number and talked to a female and gave her the rundown. She advised that the bondsman would call him within a few minutes. Shortly thereafter, he received a call from David Schneider of Zimmerman's Bail Bonds, who advised he would do the bond at no cost but it would take a while for him to get there because he was coming from Richmond. ███████████, at the jail, told Schneider that he usually worked with us and wanted to know how much he had to pay that day to make this happen and how long he would have to pay the balance? Schneider replied "you don't owe a thing, it's all taken care of through a government grant." This got the attention of the Pre-trial services worker (according to ████████ who happened to be there and she took several of his cards and stated that it just didn't seem right that he would travel from Richmond and bond two people out, not collect any money, or have anyone acquainted them to sign for them, and she was going to look into it. The Jail officers were also puzzled by it as they had never heard of such a thing. Schneider allegedly said that it was grant funded and he was on salary and he got paid regardless if the defendant went to court or not. ██████ also told me that he walked out with Schneider and he was in a vehicle with "government plates" and he reiterated that it was taken care of with a government grant. ████████ is concerned because you don't get something for nothing and he is afraid that he may be contacted later and asked to do something in return. I was originally thinking that he was going to be required to wear and pay for a monitor as well as an enormous fee for the bond on an installment plan, but I was totally off base. The only requirement is for him to check in at their Harrisonburg or Verona office, one time per week. That was again confirmed by my son last night as he talked with officer Costello from MRRJ, who was present at the time the bonds took place. He advised Tyler that Schneider told him that the people have to qualify for the bonds and it was a "charity." ████████ could have been confused by the language, maybe the bondsman said charity to him as well, which is most likely the case. With all that being said I have some questions?

If there is no rain, the creek dries up. We know that they gave away 3 shopping sprees in December for $1,000 each to families in the area and gained a lot of exposure doing it. 3,000 is an easy investment for that much attention. However they also Gave away a new house to an area family, a much larger investment. Before all of that, they purchased an entire industrial park near my office for 22 million. All of that demonstrates the water flowing through the creek, where is the rain that feeds the pond from which the water flows?

How do you keep the capital flowing if you're in the business of giving away money?

If you're legitimate and paying a bondsman to post bail for you, why wouldn't you use a local guy to cut your costs? Why pay a property bondsman to come from Richmond?

In addition, why would you have a lawyer on staff getting state bail legislation passed such as making it possible to get a bail piece release from a magistrate rather than a clerk of court?

That's a good thing, but if you are not in the bail business, why bother investing the money in legislation that benefits bail bondsmen? (Email attached)

**In the Virginia code 6VAC20-250-260 (A) Only a licensed bail bondsman shall be authorized to solicit bail bond business in the Commonwealth. It may be a gray area, but they are soliciting and awarding the business to Zimmerman's.** Should we seek an injunction keeping them from calling a bondsman as well a court order requiring them have the defendant choose their own bondsman? If it's a legal charity, the local bondsman will get the business.

A government grant doesn't make sense and there are many government vehicles at the jail so maybe ████████ was confused about the government plate. Why would the government use grant money to pay a bail bondsman when they already have a pre-trial release program that could get the defendants released on PR?

I have never heard of a charity that pays a bondsman to get people out of jail and I've never heard of a bondsman getting people out of jail without some background information on the defendant or an indemnitor.

Someone has to be guaranteeing payment of the forfeiture because the bondsman's signature is on the recognizance and the judge isn't going to care if it was for charity or not. I just can't see a bondsman taking the risk without a guarantor. The jail officers are telling us that this guy had no paper work. They said "you guys come in here with a ton of paperwork and this guy shows up with nothing." It's like he was there posting a transfer bond.

To make these particular bonds even more interesting, we all felt the impact of the storm over the weekend. The bondsman drove from Richmond. Charity or not that's 90 miles, in one of the worst snow storms in history. The incentive had to be big in order to create that desire.

Calling it a charity is the only thing that makes sense because I can't imagine the government awarding a grant for this purpose. But where is the "charity" money coming from? What is the return?

I think it is one of three things.

**1)** Money Laundering - if partnering with a property bondsman, you can eliminate the cost of the premium and build-up fund paid up the ladder, thereby reducing the costs of doing the laundry. This would increase the amount available to cover part of the bondsman's cut for cleaning up the money.

**2)** If they are actually operating on a government grant, is the government trying to increase the failure rate of bondsman getting people to court throughout the country thereby paving the way for the expansion of the federal government's pre-trial release program? Doubtful.

**3)** Could they be attempting to increase the FTA rate of defendants released by bondsmen, that are not on monitors, versus those defendants that are on monitors in order to provide statistical success rate to substantiate the expansion of electronic monitoring throughout the country?

The whole thing smells real bad and could take our business down the drain really fast. I was

told by another bail agent that Zimmerman's got 13 defendants out in Harrisonburg several months ago in the same fashion they did over the weekend at MRRJ. The bondsman is most likely inflating the numbers, but I imagine they did get some. We are now getting phone calls where the caller is asking if we are the company that gets people out for free. Nexus has a new ad running on television (trying to get a copy) indicating "if you don't have the money for bail call us." The word is spreading quickly.

The Sheriff has been made aware of Donovan's criminal history and provided the proof. There are eleven felony convictions on him and with that kind of record in his past, there is most likely fraudulent activity going on.  I haven't seen much of Richard Moore. There is a new guy on the ads which goes by the name of Evan Ajin, Vice president,  I don't have his vitals "yet" so I can't get his records at this time.

None of us can compete with free bail, and the results of free bail, will hurt us all in the end. I will keep you posted on further events and if you have any thoughts or suggestions I would like to hear them.

*David L. Bourne*

David L. Bourne, General Agent
(Office) 540-886-5447 (Mobile) ▮▮▮▮▮▮▮▮▮▮
(Facsimile) 540-886-5449



The information contained in this transmission is privileged and confidential.  It is intended for the use of the person(s) named above.  If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited.  If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message

# EXHIBIT "B"

| | |
|---|---|
| **From:** | Dave Bourne |
| **To:** | dmoran@co.augusta.va.us |
| **Subject:** | Nexus |
| **Date:** | Thursday, January 28, 2016 5:23:45 PM |

Don,

Please take a minute and check out this link http://www.nexusgives.com/ This was their nomination process. Turns out that the home they give away isn't actually given away. They only give it to them for 4 years rent free. Could someone then deposit dirty money into an account and claim it as rental income to clean the money up? Rent isn't deductible so the people living there wouldn't be deducting on their taxes, who would know?

*David L. Bourne*

David L. Bourne, General Agent
(Office) 540-886-5447 (Mobile) ███████
(Facsimile) 540-886-5449



The information contained in this transmission is privileged and confidential.  It is intended for the use of the person(s) named above.  If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited.  If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message

# EXHIBIT "C"

**From:**      Dave Bourne
**To:**        dmoran@co.augusta.va.us
**Subject:**   NEXUS
**Date:**      Friday, January 29, 2016 2:12:32 PM

Don,

      Please see the two links below. The first one is the arrest of the two bounty hunters in Richmond that work for Schneider. The second one is an article about Nexus profiting from Immigration bail with electronic monitors. ICE states that it is perfectly legal to put them on monitors but what is interesting is if you read on they say that Nexus isn't connected to a bail bond company that gets them out.

http://wtvr.com/2015/09/28/2-men-charged-with-possession-of-a-firearm-on-school-property-in-henrico-county/

http://americasvoice.org/blog/profiting-from-immigrants-bail-bond-company-charges-420-a-month-for-a-gps-ankle-bracelet/

*David L. Bourne*

David L. Bourne, General Agent
(Office) 540-886-5447 (Mobile) ████████
(Facsimile) 540-886-5449



The information contained in this transmission is privileged and confidential.  It is intended for the use of the person(s) named above.  If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited.  If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message

# EXHIBIT "D"

| | |
|---|---|
| **From:** | Dave Bourne |
| **To:** | dmoran@co.augusta.va.us |
| **Subject:** | Nexus |
| **Date:** | Friday, February 05, 2016 4:35:14 PM |

Don,

See the link below. The whole article is interesting but see paragraph 2.

http://www.whsv.com/home/headlines/GPS-Bracelets-Allow--163777136.html

*David L. Bourne*

David L. Bourne, General Agent
(Office) 540-886-5447 (Mobile) ███████
(Facsimile) 540-886-5449



The information contained in this transmission is privileged and confidential. It is intended for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message

# GPS Bracelets Could Help Jail Overcrowding and Save Tax Money



*By Amelia Nahmias* | Posted: Wed 6:48 PM, Jul 25, 2012 | Updated: Wed 7:16 PM, Jul 25, 2012

HARRISONBURG, Va -- GPS tracking bracelets are not a common sight in the Valley. We have all heard of celebrities, like Lindsay Lohan, wearing these and now Rudy Dean in the Valley is wearing one. If these GPS bracelets were to take off here, it might be something we would need to get more used to seeing.

Mike Donovan at Nexus Programs specializes in GPS monitoring systems for pre-trial defendants. If an inmate cannot afford to pay bond, Nexus will cover the fee as long as the defendant wears a GPS device.

"When they get out, we will put them on a tracking bracelet," said Donovan. "They are responsible for the cost. Instead of the tax payers paying $60 to $70 a day, the defendant pays $10 or $11."

This system will track the person 24 hours a day, 365 days a year and I will keep track of where they go, how fast, and when. Any restrictions ruled by the judge can be easily monitored.

"The banding of the bracelet has stainless steal rivets. That make it so it cannot be cut off. If you are using a professional metal cutter, it will take about 30 minutes to cut through the entire bracelet, and the moment that you initially start cutting the authorities are notified. So, the bracelet, as far as GPS tracking devices go, is one of the most secure in making sure that people can't remove it or tamper with it."

Cindy Carr is the spokeswoman for Dean and she said this bracelet is something she hopes more people will use. She said that Dean is trying to get his life back together.

"You can never get back the six months that you sit in jail without bond, but at least he didn't have to add to that," said Carr.

The use of this device could greatly reduce jail overcrowding as well as tax money, since the bracelets are fully funded by the defendant.

"Ten or eleven-dollars sounds expensive, but think about it, that's one or two working hours a day," said Donovan. "So, instead of sitting in jail and doing nothing, a person can come out get to work and be a more productive member of society."

Rockingham County Sheriff Bryan Hutcheson said it is not something that they are planning on implementing. It would be up to the judge whether this becomes more popular in the Valley.

Donovan said he hopes to have at least 20 more pre-trial inmates out on bond this year and using this GPS tracking bracelet.

Follow Amelia Nahmias on Facebook.

---

*Comments are posted from viewers like you and do not always reflect the views of this station.*

**10 Comments**    **WHSV**  Login

♥ Recommend   1    ⤴ Share     Sort by Best

 | Join the discussion…

 **Guest** · 4 years ago
\*
Again! More tax payer money wasted on criminals who don't care and think that being in jail is better than out serving their community. Make them do hard time and not a slap on the wrist because that's a slap in our face. They should be paying us to be put in jail!!!!!!!!!!!!!!!! 
3 ︿ | ﹀ · Reply · Share ›

    **anniepearl** ➜ Guest · 4 years ago
    you should go back and watch the video again. this is a DEFENDANT FUNDED program.. Not a penny from the state or taxpayers.....
    1 ︿ | ﹀ · Reply · Share ›

**anniepearl** · 4 years ago
Wow, this is pretty cool, and the best part is its all offender funded!! No more draining the pockets of the taxpayer!!!! Thats where the money needs to come from!!
This is a WIN WIN for everyone......
2 ︿ | ﹀ · Reply · Share ›

# EXHIBIT "E"

| | |
|---|---|
| **From:** | Dave Bourne |
| **To:** | Don Moran |
| **Subject:** | Re: Nexus |
| **Date:** | Friday, February 05, 2016 6:52:43 PM |

Yeah like I said a felony case averages about 16 months before final disposition. That's almost $8000.

Now I know why Nagel got the legislation passed to allow the magistrates to issue Surety's Capias. When someone don't pay the fee or attempts to cut the monitor off, they can apprehend them and get the paper right away and lock them up.

David L. Bourne, General Agent
1-800-FOR-BAIL.com
(Office) 540-886-5447
(Mobile) ███████████
(Facsimile) 540-886-5449

The information contained in this transmission is privileged and confidential.  It is intended for the use of the person(s) named above.  If you are not the intended recipient, you are hereby notified that any review, disseminatin, distribution or duplication of this communication is strictly prohibited.  If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message

On Feb 5, 2016, at 5:11 PM, Don Moran <dmoran@co.augusta.va.us> wrote:

> seems their using the gps to off set not paying the fee..
> On Feb 5, 2016, at 4:34 PM, Dave Bourne
>  <dave@1800forbail.com<mailto:dave@1800forbail.com>> wrote:
> Don,
> See the link below. The whole article is interesting but see paragraph 2.
> http://www.whsv.com/home/headlines/GPS-Bracelets-Allow--163777136.html
> David L. Bourne
> David L. Bourne, General Agent
> (Office) 540-886-5447 (Mobile) ███████████
> (Facsimile) 540-886-5449
> <image001.jpg>
> The information contained in this transmission is privileged and confidential.  It is intended for the use of the person(s) named above.  If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited.  If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies. Thank you. County of Augusta.

# EXHIBIT "F"

| From: | Dave Pastors |
|---|---|
| To: | Timothy Martin; Alexandra Meador |
| Cc: | Luther J. Hite; Samantha L. Honig; Debbie Walker; Dave Pastors |
| Subject: | Bond Appeal - ████ ██ |
| Date: | Friday, February 05, 2016 3:34:42 PM |
| Attachments: | image001.png |
| | image003.png |

Hey Tim and Alex….

The attorneys involved in this case and the individuals who were accompanying them are associated with Nexus Programs, a local group who is involved in supplying GPS tracking equipment for illegal immigrants who are required to be tracked by the Federal Immigration folks.  See link below…it is helpful to read the comment section at the bottom.  One of them was Mike Donovan.

They are trying to expand their services beyond their federal contract.  Mike Donovan who says he is the co-owner, is the former spokesperson for the Virginia Bail Bondsmen.  He was involved in introducing legislation in 2008 and subsequent years to limit pretrial programs in Virginia in order to boost bail bondmen income.  The more defendants released to pretrial on PR bonds, the less income for bail bondsmen.  Donovan lost his bail bondsmen license several years ago due to several felony convictions for financial crimes and now has reinvented himself in this GPS business.  He served time and then was on probation in the Rockingham County area.

How they make their money is they have their surety company cover the bail for defendants and then they require them to be on GPS at a daily fee.  One of the problems is that they are not concerned about the risk of the defendant, just having someone out to pay them a daily fee.  I'll be glad to slip over to chat, but I would be cautious of their operation.

Best,

Dave

http://www.whsv.com/home/headlines/GPS-Bracelets-Allow--163777136.html


David T. Pastors, Director
Blue Ridge Court Services
White Star Mill
125 South New Street
Staunton, VA  24401

540-886-1008, Ext. 4208
pastorsdt@ci.staunton.va.us


**From:** Timothy Martin [mailto:tmartin@co.augusta.va.us]
**Sent:** Friday, February 05, 2016 2:45 PM
**To:** Alexandra Meador <ameador@co.augusta.va.us>

**Cc:** Dave Pastors <PastorsDT@ci.staunton.va.us>
**Subject:** RE: Bond Appeal - J█████ D█

Alex,

Please contact Dave Pastors about the attorneys you're dealing with on this one.  Thanks.

Tim

---

**From:** Ashleigh Simmons
**Sent:** Friday, February 05, 2016 1:13 PM
**To:** Alexandra Meador <ameador@co.augusta.va.us>
**Cc:** Julie Hawkins <jhawkins@co.augusta.va.us>; Patty Campbell <pcampbell@co.augusta.va.us>;
ASimmons@courts.state.va.us; Timothy Martin <tmartin@co.augusta.va.us>
**Subject:** Bond Appeal - J█████ D█

Ladies,

A bond appeal has been set in Circuit Court for Thursday, February 11, 2016 at 11:00 AM. Alex will handle this.

Thank you.

Ashleigh Harris Simmons
Paralegal
County of Augusta
Commonwealth's Attorney's Office
Phone: 540.245.5313 ext. 109
Email: asimmons@co.augusta.va.us

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies. Thank you. County of Augusta.

# EXHIBIT "G"

| From: | Dave Bourne |
|---|---|
| To: | tmartin@co.augusta.va.us |
| Subject: | Nexus |
| Date: | Wednesday, February 10, 2016 10:04:19 PM |
| Attachments: | RECOGNIZANCE █████████████ |
| | RECOGNIZANCE ████████████ |
| | RECOGNIZANCE ████████████ |
| | RECOGNIZANCE ████████████ |
| | RECOGNIZANCE ████████████ |
| | BAIL AGENT - ZIMMERMANS BONDING.pdf |

Tim,

Below are several links about Nexus. As I said the President is Michael Donovan and the Executive Vice President is Richard Moore. Both are convicted felons multiple times and they are running a scam on the communities of Harrisonburg, Rockingham, Staunton, Waynesboro and Augusta County and I fear that other locations are soon to come. You will not see Donovan or Moor's name and title anywhere but you will hear Donovan identify himself and his title. Moore is out of sight but he is still the Executive VP. I would prefer that you get the criminal history stuff from Don Moran at ACSO 540-457-9928. I printed all the dispositions but I'm sure the most accurate records are what he pulled. Make sure you take an hour and watch the 2 episodes of Breaking Through at the bottom of the list. That will give you a clear picture of what they are trying to achieve. Keep in mind when you are watching that these are con men and wicked smart. They make themselves out to be pillars of the community with all of the stuff they give away but read the fine print. One question to ask is, where does the money come from? How does a business stay alive with all the money going out?

Attached are the bonds that I know of that they posted for free. One of the ███████ bonds was posted with 2,000 cash. The Chief Governmental Affairs Officer for Nexus Services, Richard Nagel, posted all the bonds, with the exception of ██████ and ██████, through a bonding company out of Northern Virginia Called **BRIAN COLE BAIL BONDS.** They write corporate surety on Financial Casualty & Surety paper and they do this with immigration bail throughout the country. David Wayne Schneider, owner of Zimmerman's Bail Bonds out of Chesterfield, came in and posted for ██████ and ██████.

My understanding is that the bondsmen just roll in post the bail and leave. They don't get vital information from the client in case they need to find them and they don't get family members to sign for them. They just post and go. That leaves the community in a vicarious situation. Keep in mind that convicted felons are not eligible to be licensed bail agents and that is exactly what they are trying to be and they want to supervise the defendants through electric monitors. They will use free bail as the hook with an agreement that the defendant wear and pay for an electronic monitor at $11.00 per day. The average life of most case is about 12 months. $11.00 per day X 365 is $4,015.00.  Please see my illustration below as compared to the bail bond itself. There is certainly a place for them in some cases but electronic monitors should only be used when it is mandated by the court. Otherwise it becomes a form of extortion by making the defendant pay $420.00 per month under the threat of being returned to jail.

**Bail Bond $500.00 @ $11.00 per day = $77.00 per week for 5 weeks (last payment $38.00) = $500.00.**

**Electric Monitor @ $11.00 per day = $77.00 per week for 52 weeks = $4,004.00 (52 weeks is average disposition**

time)

All my Best.

Dave

NEXUS PROFITING FROM IMMIGRANTS WITH ANKLE MONITOR
http://americasvoice.org/blog/profiting-from-immigrants-bail-bond-company-charges-420-a-month-for-a-gps-ankle-bracelet/

## NEXUS GIVES / HOME NOMINATION PROCESS
http://www.nexusgives.com/

CHRISTMAS GIVE AWAY PROGRAM
https://youtu.be/YtLzUZsRSu8

HOME GIVE AWAY
https://youtu.be/DrrQUsErsM0

## NEWS LEADER STORY OF NEXUS MOVING CORP HEADQUARTERS TO VERONA
http://www.newsleader.com/story/news/local/2015/04/28/nexus-move-augusta-county-mill-place-office-park/26515919/

## NEWS LEADER AD
http://www.newsleader.com/story/news/special-reports/2015/06/26/immigration-ministry-becomes-nationwide-business/29293751/?from=global&sessionKey=&autologin=

## NEXUS LEADERSHIP TEAM
http://www.librebynexus.com/#!our-leadership-team/ij7we

## NEXUS WEBSITE HOME
http://www.librebynexus.com/

Breaking Through Episode 1
http://www.whsv.com/content/misc/Breaking-Through-Episode-1-367381451.html

Breaking Through Episode 2
http://www.whsv.com/content/misc/Breaking-Through-Episode-2-367680461.html
-
-
David Wayne Schneider Busted

http://m.richmond.com/news/article_9db4f739-5e1d-5fab-b4ef-1aa4bc4a9a9d.html?
mode=jqm

*David L. Bourne*

David L. Bourne, General Agent
(Office) 540-886-5447 (Mobile) ████████
(Facsimile) 540-886-5449



The information contained in this transmission is privileged and confidential.  It is intended for the use of the person(s) named above.  If
you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this
communication is strictly prohibited.  If you are not the intended recipient, please contact the sender by reply email and destroy all
copies of the original message

# EXHIBIT "H"

| From: | Dave Bourne |
|---|---|
| To: | tmartin@co.augusta.va.us |
| Subject: | Nexus |
| Date: | Monday, February 15, 2016 7:18:05 PM |

BREAKING THROUGH EPISODE 3. Looks like they're going after MRRJ over the next 3 weeks.

http://www.whsv.com/content/misc/Breaking-Through-Episode-3-368605701.html

David L. Bourne, General Agent
1-800-FOR-BAIL.com
(Office) 540-886-5447
(Mobile) ███████████
(Facsimile) 540-886-5449

The information contained in this transmission is privileged and confidential.  It is intended for the use of the person(s) named above.  If you are not the intended recipient, you are hereby notified that any review, disseminatin, distribution or duplication of this communication is strictly prohibited.  If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message

# EXHIBIT "I"

**From:**      Dave Bourne
**To:**        jalee@co.augusta.va.us
**Subject:**   NEXUS
**Date:**      Monday, February 15, 2016 5:28:40 PM

Dear Jack,

Please see the links below.

Breaking Through Episode 3
http://www.whsv.com/content/misc/Breaking-Through-Episode-3-368605701.html
-
-
DONAVAN – CARMAX
http://wtvr.com/2015/06/09/dozens-paid-to-protest-outside-of-carmax/


Best,

*David L. Bourne*
David L. Bourne, General Agent
(Office) 540-886-5447 (Mobile) ████████
(Facsimile) 540-886-5449



The information contained in this transmission is privileged and confidential.  It is intended for the use of the person(s) named above.  If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited.  If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message

# EXHIBIT "J"

| | |
|---|---|
| **From:** | Jack Lee |
| **To:** | Steve Owen |
| **Subject:** | Fwd: NEXUS |
| **Date:** | Monday, February 15, 2016 9:17:52 PM |
| **Attachments:** | image002.jpg |

Hey Boss,

When you get a chance and a little time watch the 3 episodes attached. This group needs to be
watched closely. They could be recklessly dangerous to the whole criminal justice system.

Jlee

Sent from my iPad

Begin forwarded message:

> **From:** Dave Bourne <dave@1800forbail.com>
> **Date:** February 15, 2016 at 5:27:45 PM EST
> **To:** <jalee@co.augusta.va.us>
> **Subject: NEXUS**
>
>
> Dear Jack,
>
> Please see the links below.
>
> Breaking Through Episode 3
> http://www.whsv.com/content/misc/Breaking-Through-Episode-3-368605701.html
> -
> -
> DONAVAN – CARMAX
> http://wtvr.com/2015/06/09/dozens-paid-to-protest-outside-of-carmax/
>
>
> Best,
>
> *David L. Bourne*
>
> David L. Bourne, General Agent
> (Office) 540-886-5447 (Mobile) ███████
> (Facsimile) 540-886-5449

The information contained in this transmission is privileged and confidential.  It is intended for the use of the person(s) named above.  If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited.  If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies. Thank you. County of Augusta.

# EXHIBIT "K"

| | |
|---|---|
| **From:** | Jack Lee |
| **To:** | Eric Young; Lori Nicholson; Faye McCauley; Amber Hostetter; John Lilly; Bob Moubray; Tony Heflin |
| **Subject:** | Fwd: NEXUS |
| **Date:** | Monday, February 15, 2016 8:57:06 PM |
| **Attachments:** | image002.jpg |

Watch all three episodes.

Sent from my iPad

Begin forwarded message:

> **From:** Dave Bourne <dave@1800forbail.com>
> **Date:** February 15, 2016 at 5:27:45 PM EST
> **To:** <jalee@co.augusta.va.us>
> **Subject: NEXUS**
>
>
>
> Dear Jack,
>
> Please see the links below.
>
> Breaking Through Episode 3
> http://www.whsv.com/content/misc/Breaking-Through-Episode-3-368605701.html
> -
> -
> DONAVAN – CARMAX
> http://wtvr.com/2015/06/09/dozens-paid-to-protest-outside-of-carmax/
>
>
> Best,
>
> *David L. Bourne*
> David L. Bourne, General Agent
> (Office) 540-886-5447 (Mobile) ███████
> (Facsimile) 540-886-5449



The information contained in this transmission is privileged and confidential. It is intended for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message

# EXHIBIT "L"



# COMMONWEALTH of VIRGINIA

Department of Motor Vehicles
2300 West Broad Street

**Richard D. Holcomb**
**Commissioner**

Post Office Box 27412
Richmond, VA 23269-0001

May 4, 2016

Mr. David B. Briggman
███████████████████
███████████████████

Dear Mr. Briggman:

Thank you for your request for a listing of the accesses made to your Department of Motor Vehicles' record during the past two years requesting any information on your DMV records.  I appreciate the opportunity to respond.

Enclosed is the credit card receipt for payment of the five disclosures.

Based on our research, the following accesses were made to your record during that time period:

| Date of Access | Entity Accessing | Purpose of Access |
|---|---|---|
| April 2, 2016 | Experian Information Solutions<br>955 American LN, 1600 East<br>Schaumburg, IL  60173 | Received vehicle and owner information on title number ███████ for Motor Vehicle Research and Recall purposes. |
| | National Recall & Data Svcs., Inc.<br>5348 Vegas DR, STE 1236<br>Las Vegas, NV  89108 | Received vehicle and owner information on title number ███████ for Motor Vehicle Research and Recall purposes. |
| | R L Polk & Company<br>26533 Evergreen RD, STE 900<br>Southfield, MI  48076 | Received vehicle and owner information on title number ███████ for Motor Vehicle Research and Recall purposes. |

|  |  |  |
|---|---|---|
|  | Virginina Automobile Dealers<br>P. O. Box 5407<br>Richmond, VA 23220 | Received vehicle and owner information on title number ████████ for Motor Vehicle Research and Recall purposes. |
| February 15, 2016 | Augusta County Sheriff's Office | Queried Driver's License Status information on customer's social security number, twice. |
|  |  | VCIN query of vehicle registration information on customer social security number obtaining vehicle owner and registration information on VIN ending ████, title number ██████ for Law Enforcement purposes. |
|  |  | VCIN query of vehicle registration information on customer social security number obtaining vehicle owner and registration information on VIN ending ████, title number ██████ for Law Enforcement purposes. |
|  |  | VCIN query of vehicle registration information on customer social security number and title number ██████ obtaining information on VIN ending ████ and customer number ██████ for Law Enforcement purposes. |
|  | Virginia State Police (VSP) | Driver's License Image Request received through (VSP) for Law Enforcement purposes. |
| February 6, 2016 | Experian Information Solutions<br>955 American LN, 1600 East<br>Schaumburg, IL 60173 | Received vehicle and owner information on title number ██████ for Motor Vehicle Research and Recall purposes. |
|  | R L Polk & Company<br>26533 Evergreen RD, STE 900<br>Southfield, MI 48076 | Received vehicle and owner information on title number ██████ for Motor Vehicle Research and Recall purposes. |

2

| January 15, 2016 | Internal Revenue Service CID | Obtained Driver's License Status on customer number ▆▆▆▆ for name and address purposes. |
|---|---|---|
| | | Viewed vehicles currently owned by customer ▆▆▆▆ obtaining vehicle and owner information on title numbers ▆▆▆▆ and ▆▆▆▆ for tax collection purposes. |
| | | Queried vehicle and owner Information on title number ▆▆▆▆ for tax collection purposes. |
| | | Viewed vehicles currently owned by customer ▆▆▆▆ obtaining vehicle and owner information on title numbers ▆▆▆▆ for tax collection purposes. |
| | | Queried vehicle and owner Information on title number ▆▆▆▆ for tax collection purposes. |
| | | Queried lien holder information on title number ▆▆▆▆ for tax collection purposes. |
| December 23, 2015 | LexisNexis Risk Solutions, Inc. | Received a Transcript of Driver History Record as of 12/23/2015 for insurance purposes. |
| September 26, 2015 | Cross-Sell, LLC 2265 Harrodsburg RD, STE 401 Lexington, KY 40504 | Received vehicle and owner information on title number ▆▆▆▆ for Motor Vehicle Research and Recall purposes. |
| | Experian Information Solutions 955 American LN, 1600 East Schaumburg, IL 60173 | Received vehicle and owner information on title number ▆▆▆▆ for Motor Vehicle Research and Recall purposes. |

| | | |
|---|---|---|
| | National Recall & Data Svcs., Inc.<br>5348 Vegas DR, STE 1236<br>Las Vegas, NV  89108 | Received vehicle and owner information on title number ▮▮▮▮ for Motor Vehicle Research and Recall purposes. |
| | R L Polk & Company<br>26533 Evergreen RD, STE 900<br>Southfield, MI  48076 | Received vehicle and owner information on title number ▮▮▮▮ for Motor Vehicle Research and Recall purposes. |
| | Virginina Automobile Dealers<br>P. O. Box 5407<br>Richmond, VA  23220 | Received vehicle and owner information on title number ▮▮▮▮ for Motor Vehicle Research and Recall purposes. |
| September 14, 2015 | Virginia State Police (VSP) | Driver's License Image Request received through (VSP) for Law Enforcement purposes. |
| | Harrisonburg Police Dept. | Queried Driver's License Status information on customer's social security number. |
| September 10, 2015 | Commissioner of the Revenue Rockingham County | Viewed vehicles currently owned by customer ▮▮▮▮ obtaining vehicle and owner information on title numbers ▮▮▮▮ and ▮▮▮▮ for tax collection purposes.<br><br>Viewed customer information on Customer number ▮▮▮▮ for Name and Address verification purposes.<br><br>Queried vehicle and owner Information on title number ▮▮▮▮ for tax collection purposes. |
| August 3, 2015 | Xerox State & Local Solutions | Obtained vehicle and owner information on license plate number ADKS for Toll Collection purposes. |

4

| July 11, 2015 | Experian Information Solutions 955 American LN, 1600 East Schaumburg, IL  60173 | Received vehicle and owner information on title number ███████ for Motor Vehicle Research and Recall purposes. |
|---|---|---|
| | R L Polk & Company 26533 Evergreen RD, STE 900 Southfield, MI  48076 | Received vehicle and owner information on title number ███████ for Motor Vehicle Research and Recall purposes. |
| June 23, 2015 | Virginia Dept. of Transportation | Obtained vehicle and owner information on license plate number ████ for Toll Collection purposes. |
| June 16, 2015 | LexisNexis Risk Solutions, Inc. | Received a Transcript of Driver History Record as of 06/16/2015 for insurance purposes. |
| May 13, 2015 | National Motor Vehicle Titling Information System (NMVTIS) | Queried owner and vehicle information on Vehicle Identification Number ending ████ – title number ████████ |
| May 11, 2015 | Shenandoah Co. Sheriff's Office Woodstock, VA | Queried Driver's License Status information on customer number ██████. |
| | Shenandoah Co. Sheriff's Office D. Dunivan | Requested Transcript of Driver History Record as of 11/11/2015 for Law Enforcement/Trial Date Request received. |
| April 30, 2015 | National Motor Vehicle Titling Information System (NMVTIS) | Queried owner and vehicle information on VIN number Ending ████ – title number ██████. |
| January 17, 2015 | Experian Information Solutions 955 American LN, 1600 East Schaumburg, IL  60173 | Received vehicle and owner information on title number ███████ for Motor Vehicle Research and Recall purposes. |
| | R L Polk & Company 26533 Evergreen RD, STE 900 Southfield, MI  48076 | Received vehicle and owner information on title number ███████ for Motor Vehicle |

5

| | | Research and Recall purposes. |
|---|---|---|
| January 13, 2015 | Rockingham County Treasurer | Viewed vehicles currently owned by customer ███████ obtaining vehicle and owner information on title numbers ████████ and ████████ for tax collection purposes.

Queried vehicle and owner information on title numbers ████████ and ████████ for tax collection purposes. |
| January 9, 2015 | Clinton Dept. of Public Safety S. Carolina | Queried Driver's License Status information on customer number ████████, twice. |
| December 27, 2014 | Experian Information Solutions 955 American LN, 1600 East Schaumburg, IL  60173 | Received vehicle and owner information on title number ████████ for Motor Vehicle Research and Recall purposes. |
| | R L Polk & Company 26533 Evergreen RD, STE 900 Southfield, MI  48076 | Received vehicle and owner information on title number ████████ for Motor Vehicle Research and Recall purposes. |
| | Cross-Sell, LLC 2265 Harrodsburg RD, STE 401 Lexington, KY  40504 | Received vehicle and owner information on title number ████████ for Motor Vehicle Research and Recall purposes. |
| December 22, 2014 | Rockingham County Treasurer | Queried vehicle and owner information on title number ████████ for tax collection purposes. |
| December 22, 2014 | Rockingham County Treasurer | Viewed vehicles currently owned by customer ███████ obtaining vehicle and owner information on title numbers ████████ and ████████ for tax collection purposes. |

| November 11, 2014 | LexisNexis Risk Solutions, Inc. | Received a Transcript of Driver History Record as of 11/11/2014 for insurance purposes. |
| October 17, 2014 | State Police Division 1 Richmond | Queried Driver's License Status information on customer number ▮▮▮▮. |
| June 25, 2014 | Softech International, Inc. | Received a Transcript of Driver History Record as of 06/25/2014 for employment purposes. |
| June 12, 2014 | Louisa County Sheriff's Office | VCIN query of vehicle registration information on license plate number ▮▮▮▮ for Law Enforcement purposes.<br><br>Queried Driver's License Status information on customer number ▮▮▮▮. |
| June 10, 2014 | State Police Division 2 Culpeper | VCIN query of vehicle registration information on license plate number ▮▮▮▮ for Law Enforcement purposes, three times.<br><br>Queried Driver's License Status information on customer number ▮▮▮▮. |
| | State Police Division 1 Richmond | VCIN query of vehicle registration information on license plate number ▮▮▮▮ for Law Enforcement purposes, twice. |
| June 7, 2014 | Experian Information Solutions 955 American LN, 1600 East Schaumburg, IL  60173 | Received vehicle and owner information on title number ▮▮▮▮ for Motor Vehicle Research and Recall purposes. |
| | R L Polk & Company 26533 Evergreen RD, STE 900 Southfield, MI  48076 | Received vehicle and owner information on title number ▮▮▮▮ for Motor Vehicle Research and Recall purposes. |

I hope that this information is helpful.  Please feel free to contact me at (804) 497-7191 if you have any questions.

Sincerely,

Janet L. Williams
Program Manager
Use Agreement Services

Enclosure

# EXHIBIT "M"



# COMMONWEALTH of VIRGINIA

Department of Motor Vehicles
2300 West Broad Street

**Richard D. Holcomb**
**Commissioner**

Post Office Box 27412
Richmond, VA 23269-0001

May 5, 2016

Mr. Erik G. Schneider

██████████
██████████████

Dear Mr. Schneider:

Thank you for your request for a listing of the accesses made to your Department of Motor Vehicles' record during the past two years requesting any information on your DMV records.  I appreciate the opportunity to respond.

Based on our research, the following accesses were made to your record during that time period:

| Date of Access | Entity Accessing | Purpose of Access |
|---|---|---|
| April 10, 2016 | State Police Division 1 Richmond | Queried Driver's License Status information on customer number ██████. |
| February 18, 2016 | Virginia State Police (VSP) | Driver's License Image Request received through (VSP) for Law Enforcement purposes. |
|  | Augusta County Sheriff's Office | Queried Driver's License Status information on customer's social security number. |
| January 21, 2016 | Augusta County Sheriff's Office | Queried Driver's License Status information on customer's full name and date of birth. |

|  |  | Queried Driver's License Status information on customer's social security number. |
|---|---|---|
|  | Virginia State Police (VSP) | Driver's License Image Request received through (VSP) for Law Enforcement purposes. |
| November 5, 2016 | Internal Revenue Service CID | Obtained Driver's License Status on customer number ▓▓▓▓▓ for name and address purposes. |
| November 6, 2015 | VITA Enterprise Data Management | Received customer name, address, date of birth, along with prior address for government use. |
| November 5, 2015 | Virginia State Police | Obtained customer name and address on customer number ▓▓▓▓▓. DMV automatically provides this information when a customer's record is established or changed in accordance Virginia Code sections 46.2-323, 46.2-324, 46.2-330 and 46.2-345. |

I hope that this information is helpful.  Please feel free to contact me at (804) 497-7191 if you have any questions.

Sincerely,

Janet L. Williams
Program Manager
Use Agreement Services

2

# EXHIBIT "N"

| | |
|---|---|
| **From:** | Mike Roane |
| **To:** | donald.moran@ic.fbi.gov |
| **Cc:** | Donald Smith; William Spence |
| **Subject:** | Document1 |
| **Date:** | Thursday, February 25, 2016 12:16:51 PM |
| **Attachments:** | Document1.docx |

Events of 2-25-16.


Michael Roane

Investigation's Division

Augusta County Sheriff's Office

540-245-5333

Events of 2-25-16


Inv. M. C. Roane


On 2-25-16 CWA Tim Martin contacted me via phone at approximately 0825 hours.  He said that he was preparing for a bond review in the case of Commonwealth VS. D█████.  The bond hearing was set for Augusta County Circuit Court at 0900 hours.  I am currently working the alleged rape case where D███ has been charged.  There was one previous bond hearing, where bond was denied.  This is the final review of bond in the local court system.  I told Tim that I would appear and observe the case even though I was not expected to be called as a witness.  I arrived at the court house at approximately 0900 hours.  As I entered the upstairs portion of the building, I observed several (approximately 15-20) Hispanic decent persons waiting directly outside of the court room.  I entered the room and was positioned in the front row.  A few minutes later, the proceedings began.  All of the persons that were waiting outside, appeared in the courtroom and took a seat on the left side of the gallery.  Eventually I repositioned myself and was now seated on the right side.


I am vaguely familiar with the case that Inv. Moran is involved with regarding the Nexus Company.  This is the same company that has employed D████s' attorney.  Based on my limited knowledge, I took several photographs of the persons in the courtroom and forwarded them via text to Inv. Moran.  We exchanged a few text messages.  Inv. Moran encouraged me to take as many photographs as possible to assist in his investigation.  I then contacted Lt. Leveck via text and requested that he and other Investigators respond to the Wharf parking lot in a covert manner.  I requested that they observe the group and photograph vehicles and tags to assist Inv. Moran.  The bond hearing lasted approximately 2 hours, with the Judge remanding D███ to be held without bond.  I then left the courtroom and exited the building.  As I left the building I heard a male's voice call for me.  I turned around and noticed a middle aged male dressed in a suit approaching me.  I had previously noticed him in the courtroom seated with the rest of the group.  The male asked for my name.  I responded by asking him, who wanted to know.  He then explained that he was a private investigator for the defense.  I responded by saying that I wasn't going to give him my name.  He then asked me if I was involved in the case.  I told him that I was not going to speak with him.  He then responded by saying it was worth a try and requested to speak to me at some point and time.  I then told him again that I did not wish to speak to him and promptly walked away.  I then went into the building across the street and photographed the male that I had just encountered.  I called Inv. Moran via phone and explained what had just occurred.  He asked that I write a Word Doc explaining my interactions.  He also asked that I brief the Sheriff on the interaction.  I promptly responded to the office and met with Captain Spence.  Sheriff Smith was in a meeting so Capt. Spence was briefed.  I completed this Word Doc and forwarded it to Inv. Moran via email.  The photographs taken by myself and Lt. Leveck will also be forwarded to Inv. Moran.

# EXHIBIT "O"

| | |
|---|---|
| **From:** | Timothy Martin |
| **To:** | Debbie Walker |
| **Subject:** | Re: D█████ Bond Hearing Today |
| **Date:** | Thursday, February 25, 2016 1:22:22 PM |

Thank you so very much for this. It means an awful lot to me. I really can't stand these people and have no clue where the money comes from. It's weird.

Sent from my iPhone

On Feb 25, 2016, at 1:16 PM, Debbie Walker <WalkerDM@ci.staunton.va.us> wrote:

> GOOD JOB today!!!  I was proud and confident having you represent the County in the Nexus dog and pony show/fight.
> Your question to the doctor about her compensation appeared to startle the defense "team". Her answers were interesting, too!
> Glad you're in that office!
>
> *Debbie Walker*
> *Pretrial Program Manager*
>
> Blue Ridge Court Services
> White Star Mill Building
> 120 S. New Street
> Staunton, VA  24401
> 540-886-1008, ext. 4202

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies. Thank you. County of Augusta.

# EXHIBIT "P"



6 April 2016

Patrick J. Morgan, County Attorney
Augusta County Government Center
18 Government Center Lane
Verona, Virginia 24482

**BY FACSIMILE**


Dear Mr. Morgan,

Pursuant to the state open records law Va. Code Ann. Secs. 2.2-3700 to 2.2-3714, I write
to request access to and a copy of all communications, to include paper or electronic,
which contain any or all of the following terms: Nexus, Michael Donovan, Richard
Moore, Evin Ajin, or Gordon Turner. If your agency does not maintain these public
records, please let me know who does and include the proper custodian's name and
address.

I agree to pay any reasonable copying and postage fees of not more than $200.00. If the
cost would be greater than this amount, please notify me. Please provide a receipt
indicating the charges for each document.

As provided by the open records law, I will expect your response within five (5) working
days. See Va. Code Ann. Sec. 2.2-3704(B).

If you choose to deny this request, please provide a written explanation for the denial
including a reference to the specific statutory exemption(s) upon which you rely. Also,
please provide all segregable portions of otherwise exempt material.

I would note that willful violation of the open records law can result in a fine of up to
$1,000, for which you can be held personally liable. See Va. Code Ann. Sec. 2.2-3714.
Court costs and reasonable attorney fees may also be awarded. See Sec. 2.2-3713(D).

Thank you for your assistance.

Sincerely,

David B. Briggman

Director of Special Projects
Nexus Services, Inc.
(540) 908-9634

# EXHIBIT "Q"



**OFFICE OF THE COUNTY ATTORNEY**
County of Augusta, Virginia
18 Government Center Lane, P. O. Box 590
Verona, Virginia 24482-0590
(540) 245-5017 (Voice)
(540) 245-5096 (Fax)

Patrick J. Morgan
County Attorney
pmorgan@co.augusta.va.us

May 18, 2016

David B. Briggman                     3846660
Director of Special Projects
Nexus Services
113 Mill Place Parkway, Suite 103
Verona, VA 24482

        RE:     FOIA Request of April 6, 2016

Dear Mr. Briggman:

        In response to your FOIA request for documents with the terms Nexus, Michael
Donovan, Richard Moore, Evin Ajin, or Gordon Turner, I sent the attached e-mail that said a
flash drive with 104 documents was prepared for you to pick up. It has been discovered that the
flash drive you obtained contained more than the 104 documents that met the criteria you and I
discussed. The release of the additional documents was inadvertent and was not intended to be
part of the County's response. Some of the additional documents contain confidential taxpayer
information and it is a violation of Virginia Code Section 58.1-3 for you to possess it. For that
reason, it is asked that you return the flash drive and destroy any copies of it you may have
made. In return, the County will issue you a new response with only those documents you are
legally entitled to.

        I thank you for your cooperation in this matter.

                            [Signature Page Below]

Sincerely,

Patrick J. Morgan
County Attorney

PJM/cs
Enclosure

STATE OF VIRGINIA
COUNTY OF AUGUSTA

The foregoing instrument was acknowledged before me this 18th day of May 2016 by
Patrick J. Morgan, County Attorney.

Notary Public

My Commission Expires: October 31, 2017



# EXHIBIT "R"

**Edit History** 


**Augusta County Sheriff's Office - Sheriff Donald L. Smith**
October 9, 2016 at 8:43am · 👍2

MEDIA RELEASE: On October 9, 2016 at 1:03 PM, deputies responded to
the Skyline Motel located at 2497 Jefferson Highway for an unknown
situation. When deputies arrived at 1:13 PM, they found a deceased male,
and a homicide investigation is ongoing. Two females and two males have
been detained and transported to the Augusta County Sheriff's Office for
questioning. The identity of the victim and the suspect(s) will be released at
the conclusion of the investigation.


**Augusta County Sheriff's Office - Sheriff Donald L. Smith**
October 9, 2016 at 9:33am · 👍18

MEDIA RELEASE: On October 9, 2016 at 1:03 AM, deputies responded to
the Skyline Motel located at 2497 Jefferson Highway for an unknown
situation. When deputies arrived at 1:13 AM, they found a deceased male,
and a homicide investigation is ongoing. Two females and two males have
been detained and transported to the Augusta County Sheriff's Office for
questioning. The identity of the victim and the suspect(s) will be released at
the conclusion of the investigation.

This is visible to anyone who can see this post.

**Close**